## CAFETERIA EMPLOYEES UNION, LOCAL 302, ET AL. *v.* ANGELOS ET AL.

NO. 36.

Argued November 8, 1943.—Decided November 22, 1943.

*Mr. Louis B. Boudin* for petitioners.

*Mr. Abraham Michael Katz* submitted for respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

We brought these two cases here to determine whether injunctions sanctioned by the New York Court of Appeals exceeded the bounds within which the Fourteenth Amendment confines state power. 319 U. S. 778. They were argued together and, being substantially alike, can be disposed of in a single opinion.

We start with the Court of Appeals' view of the facts. In No. 36, petitioners, a labor union and its president, picketed a cafeteria in an attempt to organize it. The cafeteria was owned by the respondents, who themselves conducted the business without the aid of any employees. Picketing was carried on by a parade of one person at a time in front of the premises. The successive pickets were "at all times orderly and peaceful." They carried signs which tended to give the impression that the respondents were "unfair" to organized labor and that the pickets had been previously employed in the cafeteria. These representations were treated by the court below as knowingly false in that there had been no employees in the cafeteria and the respondents were "not unfair to organized labor." It also found that pickets told prospective customers that the cafeteria served bad food, and that by "patronizing" it "they were aiding the cause of Fascism."

The circumstances in No. 37 differ from those in No. 36 only in that pickets were found to have told prospective customers that a strike was in progress and to have "insulted customers . . . who were about to enter" the cafeteria. Upon a finding that respondents required equitable relief to avoid irreparable damages and that there was no "labor dispute" under the New York analogue

of the Norris-La Guardia Act (§ 876–a of the New York Civil Practice Act), the trial court enjoined petitioners in broad terms from picking at or near respondents' places of business. The decrees were affirmed by the Appellate Division (264 App. Div. 708, 34 N. Y. S. 2d 408), and were finally sustained by the Court of Appeals, its Chief Judge and two Judges dissenting. 289 N. Y. 498, 507, 46 N. E. 2d 903.

In *Senn* v. *Tile Layers Union*, 301 U. S. 468, this Court ruled that members of a union might, "without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution." 301 U. S. at 478. Later cases applied the *Senn* doctrine by enforcing the right of workers to state their case and to appeal for public support in an orderly and peaceful manner regardless of the area of immunity as defined by state policy. *A. F. of L.* v. *Swing*, 312 U. S. 321; *Bakery Drivers Local* v. *Wohl*, 315 U. S. 769. To be sure, the *Senn* case related to the employment of "peaceful picketing and truthful publicity." 301 U. S. at 482. That the picketing under review was peaceful is not questioned. And to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like "unfair" or "fascist"—is not to falsify facts. In a setting like the present, continuing representations unquestionably false and acts of coercion going beyond the mere influence exerted by the fact of picketing, are of course not constitutional prerogatives. But here we have no attempt by the state through its courts to restrict conduct justifiably found to be an abusive exercise of the right to picket. We have before us a prohibition as unrestricted as that which we found to transgress state power in *A. F. of L.* v. *Swing, supra*. The Court here, as in the *Swing* case, was probably led into error by assuming that if a controversy does not come within the scope of state legislation limit-

ing the issue of injunctions, efforts to make known one side of an industrial controversy by peaceful means may be enjoined. But, as we have heretofore decided, a state cannot exclude working men in a particular industry from putting their case to the public in a peaceful way "by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him." *A. F. of L.* v. *Swing,* 312 U. S. at 326.

The present situation is thus wholly outside the scope of the decision in *Milk Wagon Drivers Union* v. *Meadowmoor Co.,* 312 U. S. 287. There we sustained the equity power of a state because the record disclosed abuses deemed not episodic and isolated but of the very texture and process of the enjoined picketing. But we also made clear "that the power to deny what otherwise would be lawful picketing derives from the power of the states to prevent future coercion. Right to free speech in the future cannot be forfeited because of dissociated acts of past violence." 312 U. S. at 296. Still less can the right to picket itself be taken away merely because there may have been isolated incidents of abuse falling far short of violence occurring in the course of that picketing.

The judgments must be reversed and the causes returned to the state court for further proceedings not inconsistent with this opinion.

*Reversed.*