BOYD *v.* DODGE, CHANCELLOR.

4-9445 234 S. W. 2d 204

Opinion delivered November 27, 1950.

*T. J. Gentry* and *Wm. P. Alexander,* for petitioner.

*Blake Downie,* for respondent.

DUNAWAY, J. Petitioners as members of Communications Workers of America, CIO, Division No. 6, an unincorporated labor organization, have filed a petition in the Supreme Court of Arkansas for a Writ of Prohibition to the Pulaski Chancery Court, First Division. Petitioners pray that the court be prohibited and restrained from proceeding further in the case therein pending, *Southwestern Bell Telephone Company* v. *Jack N. Brashears.and Others* (Chancery Case No. 90241), and that the temporary restraining order issued by said court on November 9, 1950, be dissolved.

The complete record of the proceedings in the Chancery Court has been filed with the Supreme Court. From the record it appears that no testimony was taken and that the temporary restraining order was issued without notice on the basis of the petition for injunction filed by the Southwestern Bell Telephone Company.

Since the Supreme Court is not in session, petitioners presented their petition to me asking for a temporary Writ of Prohibition under the provisions. of Art. VII, § 4, of the State Constitution, which authorizes the issuance of such writs by the several judges of the Supreme Court. In view of the fact that any decision on my part in this matter would be effective only until the next regular sitting of the Court, on Monday, November 20, 1950, I asked all the other Justices to hear the argument of both sides in regard to the petition.

Petitioners are members of the Communications Workers of America, CIO, Division No. 6 and at present are on strike against their employer, the Western Electric Company. It was conceded in the oral argument that petitioners and others are regularly employed by the Western Electric Company to install and maintain telephone equipment in the various offices of the Southwestern Bell Telephone Company. It was further conceded that both the Western Electric Company and the Southwestern Bell Telephone Company are controlled by a common parent corporation, the American Telephone & Telegraph Company.

In the petition for an injunction to restrain these striking employees of Western Electric Company from engaging in picketing around the Telephone Company offices in Little Rock and in the Rosedale community, it was alleged that as a result of said picketing employees of the Telephone Company, not involved in the strike, were refusing to cross the picket lines and that thereby telephone service would be disrupted. The basis for granting injunctive relief as set out in the petition filed in the Chancery Court, and as presented in the oral argument here, is contained in this allegation: "The above described picketing of plaintiff's offices and garages is contrary to the public policy of the State of Arkansas and has endangered and, if allowed to continue, will further endanger the health, welfare and convenience of the public."

Petitioners in seeking a Writ of Prohibition challenge the jurisdiction of the Chancery Court. This attack is made on two grounds: First, that the court had no jurisdiction of the petition for the reason that the Communications Workers of America, CIO, Division No. 6, is an unincorporated labor organization which cannot be sued in its association name as it is not a legal entity. Second, that the court has no jurisdiction of the subject matter covered by the complaint for the reason that the field of picketing for higher wages in business engaged in interstate commerce has been pre-empted by the Federal Labor-Management Relations Act of 1947 (Public Law 101, 80th Congress, 29 U. S. C. A. Supp. § 141, *et seq.*). It is petitioners' contention that, in the absence of an allegation of some acts in connection with picketing over which the State has police power (either because of acts in violation of state statutes or common law), the remedy for an alleged unfair labor practice under the Federal Labor-Management Relations Act is before the National Labor Relations Board or in the Federal courts as prescribed in that Act.

There is no allegation in the petition filed by the Telephone Company in the Chancery Court of any violence, mass picketing, threats, or intimidation. It is con-

ceded that the picketing complained of was peaceful and, as already stated, the only basis for the injunction was that the picketing was resulting, or would result, in disruption of telephone service, and that this is contrary to the public policy of the State of Arkansas. It was conceded in the oral argument that the striking employees, when on the job, work in certain buildings of the Telephone Company, and that their supervisors operate from these buildings. There are no disputed questions of fact involved.

As already stated the complete record of the proceedings in the Chancery Court has been filed with the Clerk of the Supreme Court. After consultation of all the Justices of the Court, a majority of the Justices are of the opinion that the petition filed herein should be treated as an appeal from the interlocutory order of the Chancellor granting a temporary restraining order against all picketing. Ark. Stats. § 27-2102 provides that an appeal may be taken to the Supreme Court from an interlocutory order granting or refusing an injunction. That section further provides: "The proceedings in other respects in the circuit or chancery court shall not be stayed during the pendency of such appeal unless otherwise ordered by the court, or by the Supreme Court, or a judge thereof." In view of the opinion of a majority of the Justices that this proceeding should be treated as brought under that section of the statutes, the question is whether a stay should be granted as therein provided pending final determination of the appeal by the court.

The only ground stated in the petition below for the relief prayed and for the restraining order prayed thereon is that the picketing violates the public policy of this state. No statute nor decision of this court is cited as declaring this public policy. There is no allegation nor finding of violence, law violation or breaches of the peace. Another allegation in the petition in the court below was "The defendant union does not represent any of the employees of the plaintiff and no labor dispute exists or could exist between the plaintiff and the said defendant union or the members thereof . . . Ac-

cordingly, there is no offer, concession or other act which the plaintiff could make or do which would solve or in any other way affect any labor dispute to which the defendant union is a party.''

That members of labor unions may engage in peaceful picketing is elementary. In the recent case of *Local No. 802* v. *Asimos,* 216 Ark. 694, 227 S. W. 2d 154, the authorities both of the Supreme Court of Arkansas and of the Supreme Court of the United States in regard to the right to picket were fully collected and reviewed. The public policy of this State, as found in the Constitution and decisions of the Supreme Court, may be summarized in the words of a headnote to that case. ''In the absence of proof showing that mass picketing is conducted and that acts of violence in connection with the picketing have occurred, labor unions may, on the grounds of free speech guaranteed by the 14th Amendment to the U. S. Constitution, engage in picketing.''

That case, it seems to me, is also determinative of the Telephone Company's argument with regard to the non-existence of a labor dispute with its own employees. There, in seeking to uphold an injunction it was argued ''Because no labor dispute existed between appellees and their employees, . . . there was in progress no strike which might have justified peaceful picketing.'' In answer to that contention Justice McFADDIN, speaking for the court, said: (at page 702 *et seq.*) ''Appellees are correct in stating the fact that no labor dispute existed between the Jefferson Coffee Shop and its employees.

. . . . . .

''Thus, the learned Chancellor was evidently of the opinion that until the employees went on strike, there could be no picketing; and that in the absence of a labor dispute, the Union had no right to establish a picket line.

''. . . we are under oath to obey the United States Constitution; and the interpretation of that document, as made by the United States Supreme Court, is binding on us. That tribunal has decided that there may be picketing in the entire absence of a labor dis-

pute. (Citing and discussing *Bakery and Pastry Drivers* v. *Wohl,* 315 U. S. 769, 86 L. Ed. 1178, 62 S. Ct. 816, and *Cafeteria Employees* v. *Angelos,* 320 U. S. 293, 88 L. Ed. 58, 64 S. Ct. 126.)

.   .   .   .   .   .

"The Bakery case and the Cafeteria case, just discussed, are cases that rule here. In the case at bar there was an absence of violence, law violations, or breaches of the peace (growing directly out of the picketing); there was no mass picketing; the signs carried by the pickets were not libelous or false; there is no proof that there was a demand for a closed-shop. In short, there is no fact present in the case at bar to distinguish it from the Bakery case and the Cafeteria case, just discussed, so .we must hold that there can be peaceful picketing even in the absence of a labor dispute relating to persons presently employed; and we must dissolve in part the injunction granted by the Chancery Court."

Lest this memorandum be misunderstood, I should add that this case does not involve the question of whether a secondary boycott is legal under Arkansas law. A secondary boycott occurs when striking employees, in addition to picketing the premises of their own employer, also establish picket lines around the premises of others not so directly interested in the labor dispute, such as customers to whom the primary employer sells or manufacturers from whom he buys. This question is not now presented, for in the oral argument it was admitted by counsel for the Telephone Company that no contention of the existence of a secondary boycott is being made.

It may be that the right to picket as presently interpreted should be circumscribed in cases where widespread public inconvenience might result, as in the case of public utilities, but that is a matter for the legislative branch of government and not the courts to determine.

Constitutionality of Ark. Stats. § 27-2102 was upheld in the case of *Sager* v. *Hibbard,* 203 Ark. 672, 158 S. W. 2d 922. There in discussing the reasons for the enactment of this statute, Chief Justice GRIFFIN SMITH,

speaking for the court, said: (at page 676) "Modern business, commerce, and even professions, are such that serious consequences may attend delay in determining whether an order mentioned in Act 355 has been improvidently granted or denied. It was the legislative intent to relieve against possible error."

The effects of an improperly granted injunction against a labor union can be just as important to that economic group as to those mentioned in the *Sager* case. The Telephone Company argues that since it has filed a thousand dollar bond petitioners are adequately protected against damage in the event the court ultimately determines that an injunction should not have been granted. Aside from the economic consequences to these petitioners of being wrongfully restrained from engaging in peaceful picketing, which would hardly be susceptible of proof, deprivation of their constitutional right of free speech cannot be compensated for in dollars and cents.

The Clerk of this court is therefore directed to issue an order staying any further proceedings under the temporary restraining order of the Pulaski Chancery Court in so far as it applies to picketing around any buildings of the Telephone Company where the petitioners regularly engage in work, until further orders of the Supreme Court. This of course is without prejudice to the right of the Southwestern Bell Telephone Company to petition the Chancery Court for appropriate injunctive relief if the picketing engaged in violates the law of this State as set forth in *Local No. 802* v. *Asimos, supra.*

The question of whether federal or state jurisdiction is involved in the circumstances of this case can be decided when the case is submitted to the court on appeal. I therefore express no opinion on this matter and will not discuss the authorities cited by counsel.

Since the Chief Justice and Justice McFADDIN are filing separate memoranda, noting their disagreement with this order, I might add that Justices HOLT, MILLWEE, GEORGE ROSE SMITH and LEFLAR agree with the views herein expressed.

GRIFFIN SMITH, C. J., expressing his own views. The controversy was presented to a Justice of this Court on petition for a temporary writ of prohibition. The Justice addressed requested other members to sit with him in an advisory capacity during presentation of the case by oral argument. The general rule is that something the trial court has already done cannot be tested by prohibition. But the Justice who was asked to consider the petition concluded it should be treated as an appeal and that the Chancellor's injunction should be stayed under authority of Sec. 27-2102 Ark. Stats. On the face of the transaction there would follow the conclusion that the relief given is good until the Court convenes November 20.

But in deciding how the petition should be treated and in discussions relating to the stay, four other Justices agreed with the procedure; so we have the anomaly of an appeal wherein the merits of highly controversial issues will relate back to the action of a single Judge acting when the Court was not in session, but relying upon assurances of associates who have advised that the petition be transmuted to a classification under which the injunction can be stayed.

The so-called labor dispute (as a consequence of which Western Electric employees picketed Southwestern Bell) does not involve a disagreement between the telephone company and its own employees. The petition filed with Judge Dodge contains the sworn statement that "there is no offer, concession, or act which (Southwestern) could make or do which would solve or in any way affect any labor dispute to which the defendant union is a party." This paragraph was called to the attention of attorneys for the prohibition petitioners during oral argument, and the question was asked whether it was true. No answer has yet been given.

The effect of what we are doing is to decide the litigation on its merits, and—in the absence of any evidence —to hold that Western Electric strikers have the right to picket Southwestern. In the present state of the record

not a member of this Court knows, or can know, what the facts are upon which Western workers predicate their claim to the right of interference with Southwestern property and personnel. It is not disputed that Western Electric and Southwestern Bell are distinct corporations. Whether the control of Western by Southwestern, or whether Southwestern's business influence precipitated the strike—these are matters not yet developed. It is admitted that Southwestern buys mechanical equipment from Western, and that Western workers make the installations. It is also conceded that no Western employee is now working in or on Southwestern property.

My disagreement with the majority goes to procedural rules alone. Primarily it is grounded upon the belief that the judicial process should not be accelerated at the cost of deliberation when facts essential to a fair determination may be procured. In treating the petition for prohibition as an appeal we have deprived the losing party of its right to show (when the Chancellor would if not interfered with hear the cause on motion to make the injunction permanent) what the actual facts relating to the dispute are. This is not a service to capital, labor, the judicial process, or the public.

I would deny the writ, but direct an expeditious hearing on the motion to make permanent, then reach a conclusion in the light of record information.

PER CURIAM. On November 17, 1950, by order of one of the justices of this court, an appeal was granted in this cause and a temporary stay issued against further proceedings in the Pulaski Chancery Court under a temporary restraining order theretofore issued by that court.

This court at its next regular sitting, on November 20, 1950, continued this temporary stay in effect until further orders of the court. By this action, the memorandum opinion of Justice DUNAWAY was adopted as the opinion of the court, the Chief Justice and Justice McFADDIN dissenting.

It is now made to appear to the court that the temporary restraining order of the Pulaski Chancery Court

appealed from herein was dissolved and the petition for injunction dismissed on motion of the petitioner below, Southwestern Bell Telephone Company. Appellee, Southwestern Bell Telephone Company, now prays that the memorandum opinion of November 17, 1950, be withdrawn and the appeal be dismissed since the questions raised by the appeal are now moot.

It is the opinion of the court that the appeal is now moot, and the same is hereby dismissed. The memorandum opinion rendered in granting the temporary relief sought in this court, however, will not be withdrawn, and stands as the opinion of the court with respect to the relief heretofore granted.

The dismissal of the appeal is without prejudice to any proceedings which may be had under the bond made in the Pulaski Chancery Court in connection with the granting of the temporary restraining order of November 9, 1950.

GRIFFIN SMITH, dissenting. The Per Curiam order adopting Judge DUNAWAY's opinion was made November 27th. The Court's treatment of the controversy was announced November 20th and was a continuation of the action of an individual Judge, then concurred in by four others, but no opinion was adopted. (See Supreme Court Judgment Record C-47, p. 249.) On the contrary, the status quo was affirmed and parties to the record were accorded the right to be heard at a later date.

Expressions of the Chief Justice at the time the individual order was made are self-explanatory, but because no opinion was adopted these views could not be termed a dissent; nor could they assume that status on the 20th when the only Court action was to continue the individual order.

The practical wisdom of not precipitately acting was justified when, before the temporary order could reach the Court sitting in its constitutional capacity, the strike was terminated. Result of our hasty intervention was to adjudicate the rights of each side on pleadings and orders alone, without having before us the factual background

disclosing relationship of the parties. Had the matter been at once remanded to the Chancellor with directions for a prompt hearing, the value of this Court's determination of a dispute abounding in complications would have been of some permanent value.

ED. F. McFADDIN, Justice (dissenting). I vote against the issuance of the Writ of Prohibition in this case at this time. I feel that the remedy by Appeal (under § 27-2102, Ark. Stats.) is adequate; and that the case should be reviewed on appeal in the regular manner, rather than by the extraordinary writ, as is here attempted.

Furthermore, even if the application for writ of prohibition be treated as an appeal—concerning the propriety of which I am in doubt—nevertheless I feel that the order of the Chancery Court should remain in force until the case is briefed and heard on its merits.