LOCAL UNION NO. 47, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, et al., Appellants,

v.

CAIN, BROGDEN & CAIN, Inc., Appellee.

No. 15587.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 1, 1954.

Rehearing Denied Nov. 12, 1954.

Mullinax & Wells and Otto B. Mullinax, Dallas, for appellants.

Tilley, Hyder & Law, and Thos. H. Law, Fort Worth, for appellee.

BOYD, Justice.

This is an appeal from a temporary injunction restraining appellants, Local Union No. 47, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Glenn Bailey, H. T. Blankenship, Barton Wheat and J. B. Sanders, from picketing at or near any of the premises where appellee, Cain, Brogden & Cain, Inc., is engaged in construction work in Tarrant County, Texas, and from interfering with or attempting to prevent the free flow of commerce to and from any of appellee's premises in Tarrant County.

Appellee is engaged in the construction business and is presently constructing a building known as "Fair West Shopping Center," and a building for Matthews Memorial Methodist Church, both in Fort Worth.

Appellant Union, an affiliate of the American Federation of Labor, is interested in improving wages, hours and working conditions of its members and other persons engaged in the business of hauling materials by truck to construction job sites, either as employees or independent contractors. It has tried to secure contracts from general contractors such as appellee, who operate in the Fort Worth area, guaranteeing that union wages, hours and working conditions will be furnished by such contractors and their subcontractors to all persons hauling materials to their construction sites.

Appellee does not employ full-time truck drivers, but sand, gravel and other materials used in its construction projects are delivered to the sites by subcontractors, who employ both union and nonunion drivers.

The court found that none of appellee's employees is a member of appellant Union, and none is eligible for such membership; that there is no complaint from any of appellee's employees as to wages, hours or working conditions; and that there is no such controversy between any of appellee's subcontractors and their employees.

Appellant Union had asked appellee for a contract prescribing union wages and working conditions for truck drivers on its project, whether members of a union or not. Appellee declined to negotiate with the Union on ground that such was a matter for the subcontractors.

On August 4, 1954, appellant Blankenship, the Union's representative, called appellee's President, Roy Cain, by telephone and said: "'You have got a man working out on Matthews Memorial Church * * *' * * * Joe Campbell, * * * 'using non-union truck drivers. * * * If it isn't stopped, we are going to put pickets on your job.'"

Cain explained to Blankenship that he had no control over Campbell; that Campbell was a subcontractor who was furnishing gravel for that construction job; and if there were any complaints they should be directed to Campbell. Substantially the same conversation took place between Blankenship and Cain in regard to Jim Childress, who had the subcontract for hauling gravel to the Fair West project. This was the only time that Cain was contacted by the Union.

On August 5, 1954, the Union established a single picket at and near the Fair West project, who carried a sign reading, "On Strike Against Cain, Brogden & Cain for Better Wages and Working Conditions, Teamsters Local 47, AFL." The picketing was peaceful, and consisted in the picket's displaying the sign while walking to and fro in the public street adjacent to the construction site.

One effect of the picketing was that some of appellee's employees and some employees of its subcontractors refused to cross the picket line and refused to work on the project. It is not contended that appellee was not damaged by the slowing up of the work.

The court found that no labor dispute existed between appellee and any of the appellants, and that the action of appellants in picketing appellee's premises constituted secondary picketing and a secondary boycott. It was further found that appellee had filed charges with the National Labor Relations Board in connection with the situation giving rise to the suit, but the "rules, regulations and orders of the National Labor Relations Board provide that it cannot take jurisdiction of such situation and that the duly authorized representatives of said Board have ruled that it cannot take jurisdiction thereof."

By points for reversal, appellants urge that the injunction deprives them of the right of freedom of speech guaranteed by the state and federal constitutions; that the court had no jurisdiction "at least until it was alleged and shown that appellee had exhausted its remedies under the Taft-Hart-ley Act [29 U.S.C.A. § 141 et seq.]"; that the injunction was granted without a showing of irreparable injury or the inadequacy of legal remedies; and that the injunction is erroneous because it accomplishes the whole object of the suit and thereby determines rights without a trial.

Does the injunction restrict appellants' constitutional right of freedom of speech? If it does, it cannot stand, irrespective of any other question in the case.

The right of free speech is not unlimited. Borden Company v. Local No. 133 of International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Tex.Civ.App., 152 S.W.2d 828; Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836; Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; Carpenters & Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143.

But whatever is the extent and scope of free speech which is secured by the First Amendment to the federal constitution against abridgement by the United States, it is similarly secured by the Fourteenth Amendment against abridgement by a state. Schneider v. State of New Jersey (Town of Irvington), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155, and cases there cited in note 8; American Federation of Labor v. Bain, 165 Or. 183, 106 P.2d 544, 130 A.L.R. 1278.

Members of a union may, without special statutory authorization, make known the facts of a labor dispute. Senn v. Tile Layers Protective Union, Local No. 5, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855. The existence of that right therefore not depending upon legislative sanction, it cannot be restricted by unauthorized legislative enactment. Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58.

■ We think it is now settled that publicizing the facts of a labor dispute by appropriate means, whether by word of mouth, by pamphlet, or by banner, unattended by violence or conduct otherwise unlawful, is within that liberty of communication secured to every person by the First and Fourteenth Amendments. International Union of Operating Engineers, Local No. 564 v. Cox, 148 Tex. 42, 219 S.W.2d 787; Carlson v. California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 745, 84 L.Ed. 1093. In the Thornhill case the court said: "* * * It may be that effective exercise of the means of advancing public knowledge may persuade some of those reached to refrain from entering into advantageous relations with the business establishment which is the scene of the dispute. Every expression of opinion on matters that are important has the potentiality of inducing action in the interests of one rather than another group in society. But the group in power at any moment may not impose penal sanctions on peaceful and truthful discussion of matters of public interest merely on a showing that others may thereby be persuaded to take action inconsistent with its interests. * * * '* * * streets are natural and proper places for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.' * * *"

If we assume, then, that peaceful picketing may not be curtailed when carried on in "appropriate" places, the question arises, Do the constitutional provisions vouchsafe the right of a teamsters' union, which is interested in securing contracts prescribing union wages and working conditions for truck drivers engaged in transporting building materials, to picket peacefully the construction site of a building contractor, although such contractor does not employ truck drivers but has building materials delivered to his site by subcontractors who employ union and nonunion truck drivers, and where there is no complaint from the employees of the general contractor or his subcontractors as to wages, hours or working conditions? We cannot find where the exact question has been presented to a court; but fortunately we are not without guideposts which may point the way to its solution.

The case of American Federation of Labor v. Swing, supra, is not altogether dissimilar to ours. The state court had entered a decree in effect holding that there could be no peaceful picketing or persuasion in relation to a dispute between an employer and a trade union unless the employer's own employees were in controversy with him. The employer had no such controversy and no employee engaged in the picketing. It was conducted by union members who were in the same industry but were employed by others. The United States Supreme Court said [312 U.S. 321, 61 S.Ct. 570]: "* * * The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. * * *"

In Bakery and Pastry Drivers and Helpers Local 802 of International Brotherhood of Teamsters v. Wohl and Platzman, 315 U.S. 769, 62 S.Ct. 816, 817, 86 L.Ed. 1178, the union members were truck drivers occupied in the distribution of bakery products, and Wohl and Platzman were peddlers of bakery products. They had been asked to join the union but declined. The peddlers bought from bakeries and sold and delivered to retailers. Neither employed a driver. Both worked seven days per week, averaging from thirty-three to sixty-five hours each. One made about $32 per week and the other about $35. Each maintained a delivery truck, registered in his wife's

name. They did not have contracts with bakeries or with any customers. The union engaged in obtaining collective bargaining agreements prescribing hours, wages and working conditions of bakery drivers. It asked Wohl and Platzman to work only six days per week and use an unemployed union driver one day, the union wage being $9 per day. When Wohl and Platzman refused to employ a union relief man and continued to work seven days per week, the union caused two pickets to walk in the vicinity of a bakery which sold products to Wohl and Platzman, each picket carrying a placard, one bearing Wohl's name and one Platzman's, and under each name was this statement: " * * * 'A bakery route driver works seven days a week. We ask employment for a union relief man for one day. Help us spread employment and maintain a union wage, hours and conditions. * * *'" The trial court held that no labor dispute was involved and concluded that Wohl and Platzman were the sole persons required to run their business and were not subject to picketing to compel them to employ union labor, and enjoined the picketing. The judgment was sustained by the state appellate courts.

In reversing the above case, the United States Supreme Court said: "So far as we can ascertain from the opinions delivered by the state courts in this case, those courts were concerned only with the question whether there was involved a labor dispute within the meaning of the New York statutes and assumed that the legality of the injunction followed from a determination that such a dispute was not involved. Of course that does not follow: one need not be in a 'labor dispute' as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication 'unattended by violence, coercion, or conduct otherwise unlawful or oppressive."

In Cafeteria Employees Union, Local 302 v. Angelos, supra, it was held that the fact that there is no "labor dispute" within the meaning of a state statute does not prevent an injunction against picketing from being an infringement of the constitutional right of free speech.

In American Federation of Labor v. Bain, supra [165 Or. 183, 106 P.2d 547], the Supreme Court of Oregon struck down as violative of the Fourteenth Amendment a state statute which undertook to prohibit picketing unless there is " 'an actual bona fide existing labor dispute' " between an employer and his employees; and the statute defined a labor dispute to mean and include " ' * * * only an actual bona fide controversy in which the disputants stand in proximate relation of employer and the majority of his or its employees and which directly concerns matters directly pertaining to wages, hours, or working conditions of the employees of the particular employer directly involved in such controversy. * * *'" Laws Ore.1939, c. 2, §§ 1, 3.

The Supreme Court of this state has held void, as violative of the Fourteenth Amendment, our statute Article 5154f, Sec. 2, sub. h, Vernon's Ann.Civ.St., which undertakes to limit a "labor dispute" to " ' * * * any controversy between an employer and the majority of his employees concerning wages, hours or conditions of employment; provided that if any of the employees are members of a labor union, a controversy between such employer and a majority of the employees belonging to such union, concerning wages, hours or conditions of employment, shall be deemed, as to the employee members only of such union, a labor dispute within the meaning of this Act. * * *'" International Union of Operating Engineers, Local No. 564 v. Cox, supra [148 Tex. 42, 219 S.W.2d 791]; Construction and General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958, 961. In the Stephenson case the court said: "We do not think that the injunction can be upheld on the ground that no 'labor dispute' existed because there was in fact no dispute between Stephenson and any of his employees. * * *"

An injunction against picketing was sustained in Carpenters & Joiners Union of America, Local No. 213 v. Ritter's Cafe,

315 U.S. 722, 62 S.Ct. 807, 809, 86 L.Ed. 1143. Ritter operated a cafe in Houston, Texas; all of his employees were members of the Hotel and Restaurant Employees International Alliance; there was no controversy between Ritter and his employees or their union. Ritter contracted with Plaster to construct for him a building a mile and a half from the cafe, and which was to be wholly unconnected with the business of the cafe. The contract gave Plaster the right to make his own arrangements as to employment of labor in the construction. He employed nonunion carpenters and painters; and because of that members of the carpenters' and painters' union picketed Ritter's Cafe. The state courts found that the picketing was for the avowed purpose of forcing Ritter to require Plaster to employ only union members and in violation of the state's antitrust laws, Article 1632 et seq., Penal Code. This holding was sustained by the United States Supreme Court.

We think there is in the decision in the Ritter case the clear implication that a state in upholding its antitrust laws may not prohibit peaceful picketing when employed under circumstances where there exists an " 'interdependence of economic interest of all engaged in the same industry' ", even though as a consequence of such picketing a party's business may be adversely affected. It was pointed out that the "decree forbade neither picketing elsewhere (including the building under construction by Plaster) nor communication of the facts of the dispute by any means other than the picketing of Ritter's restaurant. * * * Texas has undertaken to localize industrial conflict by prohibiting the exertion of concerted pressure directed at the business, wholly outside the economic context of the real dispute, of a person whose relation to the dispute arises from his business dealings with one of the disputants. * * *"

Peaceful picketing was enjoined in Borden Company v. Local No. 133 of International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Tex.Civ.App., 152 S.W.2d 828, which was directed at a customer of the employer having a dispute with the union. The facts in that case distinguish it from ours.

■ We do not think that Article 5154f, wherein "secondary picketing" and "secondary boycott" are defined, warrants the injunction in this case. In International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 393 v. Missouri Pac. Freight Transport Co., Tex.Civ.App., 220 S.W.2d 219, 251, it is said: "Under the line of decisions which we have discussed, former distinctions made between primary and secondary picketing have ceased to be valid. A distinguished commentator has this to say of these decisions from p. 92 of the 1947 Supplement to Teller's Labor Disputes, by Ludwig Teller:

" 'To the extent that labor unions follow the subject matter of the dispute, they may engage in secondary picketing but only within the industry of the primary controversy. The Wohl and Ritter's Cafe cases regard picketing under such circumstances as a constitutional right resulting from the present degree of the identification of picketing with free speech. The Supreme Court has thereby appreciably enlarged the right to picket * * *. State decisions have rested upon the asserted ground that the retailer or other third party is a neutral to the labor dispute. Clearly he is not. There is a basis for labor's claim that he is the beneficiary of the protested substandard or unfair working conditions; * * *.' " See also International Union of Operating Engineers, Local No. 564 v. Cox, supra.

We think that appellee's business is not outside "the economic context" of the dispute. It uses sand, gravel and other building materials which are transported to its building sites. The fact that it contracts with others to haul the materials does not insulate or disassociate it industrially from the area of the dispute. Carpenters & Joiners Union of America, Local No. 213 v. Ritter's Cafe, supra.

■■ We conclude that the injunction against "Picketing at or near any of the premises where Plaintiff (appellee) is en-

gaged in construction work in Tarrant County, Texas," is an abridgement of the constitutional right of free speech secured by the First and Fourteenth Amendments, as the provisions of those Amendments have been construed by the United States Supreme Court. That Court is the final arbiter in the field of federal constitutional law, and its decision as to what a constitutional provision means is binding on state judges, irrespective of their personal views as to the soundness of the decision.

We are not to be understood as holding that displaying libelous matter on placards in connection with picketing is protected under the constitutional guaranty of free speech.

The judgment granting a temporary injunction against picketing any of the premises where appellee is engaged in construction work in Tarrant County, Texas, is reversed and the temporary injunction is vacated.