Taft, J.
Defendants complain that the judgment of the Court of Appeals was based upon its finding that the picketing was for the purpose of bringing pressure upon plaintiffs to compel their employees to join the defendant union but that the *217 petition contains no allegation with respect to any such purpose. We believe that the power of this court, with respect to amendments to pleadings (Section 2309.58, Revised Code), and the directions of the General Assembly, with respect to disregarding defects in pleadings not affecting substantial rights of the adverse party (Section 2309.59, Revised Code), are such that we are not justified in setting aside the judgment of the Court of Appeals in the instant case merely because the petition fails to specify the unlawful purpose of the picketing. The petition does-allege that the picketing was unlawful, no motion to make it definite and certain was filed, no demurrer thereto was filed, and defendants were apparently not misled by such failure to specify the unlawful purpose of the picketing.
Defendants also complain because the agreed statement of facts does not include, as one of the agreed “facts upon which” the Court of Appeals “should consider” the appeal, that the picketing was for any such purpose. However, where parties agree that certain facts are “the facts upon which” the “court should consider” a case, the court, in deciding such case, may quite properly base its decision in part upon other facts that may reasonably be inferred from the facts agreed upon.
In view of the facts agreed upon in the instant case, the Court of Appeals could hardly have found that there was any purpose for the picketing except the purpose of pressuring plaintiffs to compel their employees to join the defendant union. Although the wording of the signs used in the picketing tends to show that the only thing defendants were interested in was getting plaintiffs’ employees into the union, plaintiffs had not objected to defendants’ talking to plaintiffs’ employees about joining the union and had even suggested that defendants do so. Especially before defendants had taken advantage of this opportunity to talk with plaintiffs’ employees, there would appear to be no apparent reason for defendants to picket in order merely to pressure or to persuade those employees to join the defendant union. It is quite clear from the facts agreed upon that the purpose of the picketing was to conscript plaintiffs, or to pressure plaintiffs into volunteering, as allies of defen *218 dants in pressuring plaintiffs’ employees to join defendant union.
In order to compel their employees to join defendant union, it would be necessary for plaintiffs to discharge employees unless they joined that union. In effect, therefore, defendants’ purpose of pressuring plaintiffs to compel their employees to join the defendant union amounted to a purpose of pressuring plaintiffs to discharge their employees unless they joined that union.
We have, therefore, in the instant case, peaceful picketing against an employer, conducted on the sidewalk in front of the employer’s premises by persons who were never employed by that employer and who do not represent anyone who ever was, and conducted for the purpose of pressuring the employer to discharge his employees unless they join the. union of those who are conducting the picketing.
After the decision in American Federation of Labor v. Swing, 312 U. S., 321, 85 L. Ed., 855, 61 S. Ct., 568, there was certainly room for doubt as to whether a state court could enjoin such picketing without conflicting with the right to free speech guaranteed by the federal Constitution. See also Senn v. Tile Layers Protective Union, 301 U. S., 468, 81 L. Ed., 1229, 57 S. Ct., 857; Thornhill v. Alabama, 310 U. S., 88, 84 L. Ed., 1093, 60 S. Ct., 736; Carlson v. California, 310 U. S., 106, 84 L. Ed., 1104, 60 S. Ct., 746. But cf. Valentine v. Christensen, 316 U. S., 52, 86 L. Ed., 1262, holding that a state may prohibit use of its streets for distribution of advertising material.
Since the decision in the Swing case, the problems, with respect to infringement of the right of free speech by injunctions against picketing, have been considered in numerous decisions by the United States Supreme Court and by state courts of last resort, and have also been the subject of a considerable body of other legal literature. See for example Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 312 U. S., 287, 85 L. Ed., 836, 61 S. Ct., 552; Carpenters and Joiners Union of America v. Ritter’s Cafe, 315 U. S., 722, 86 L. Ed., 1143, 62 S. Ct., 807; Bakery & Pastry Drivers & Helpers Local 802 v. Wohl, 315 U. S., 769, 86 L. Ed., 1178, 62 S. Ct., 816; Cafeteria Employees Un *219 ion v. Angelos, 320 U. S., 293, 88 L. Ed., 58, 64 S. Ct., 126; Giboney v. Empire Storage & lce Co., 336 U. S., 490, 93 L. Ed., 834, 69 S. Ct., 684; Building Service Employers International Union v. Gazzam, 339 U. S., 532, 94 L. Ed., 1045, 70 S. Ct., 784; Hughes v. Superior Court, 339 U. S., 460, 94 L. Ed., 985, 70 S. Ct., 718; International Brotherhood of Teamsters v. Hanke, 339 U. S., 470, 94 L. Ed., 995, 70 S. Ct., 773, 13 A. L. R. (2d), 631; Local Union No. 10 v. Graham, 345 U. S., 192, 97 L. Ed., 946, 73 S. Ct., 585; annotations at 11 A. L. R. (2d), 1338; 93 L. Ed., 1151, 1186 et seq.; 94 L. Ed., 973, 975 et seq.; Teller, Picketing and Free Speech, 56 Harvard Law Review, 180; Dodd, Picketing and Free Speech: A Dissent, 56 Harvard Law Review, 513; Teller, Picketing and Free Speech: A Reply, 56 Harvard Law Review, 532; Jaffe, In Defense of the Supreme Court’s Picketing Doctrine, 41 Michigan Law Review (1943), 1037.
As a result, it may fairly be said that it is difficult to rescue the principles of law decided from the ocean of words in which they are submerged. For this reason, and because many of these cases were recently reviewed by Judge Hart in his opinion in W. E. Anderson Sons Co. v. Local Union No. 311, 156 Ohio St., 541, 104 N. E. (2d), 22, we will merely state our conclusions as to the principles of law which have in our opinion now been established by the decisions of the Supreme Court of the United States, to the extent that those principles indicate whether or not the injunction against picketing in the instant case conflicts with the right to free speech guaranteed by the federal Constitution; and we will quote briefly some of the reasoning which was used in those decisions and which we believe supports our conclusions.
In our opinion, where the public policy of a state regards picketing of the kind involved in the instant case as unlawful, a state court may enjoin such picketing without infringing the right of free speech guaranteed by the Fourteenth Amendment to the federal Constitution; and the fact, that such public policy has been found by the courts of that state to be a part of its common law instead of being expressed by its Legislature in statutory form, is immaterial.
Thus in Building Service Employers Intl. Union v. Gazzam, supra (339 U. S., 532), it is said in the court’s opinion:
*220 “This court has said that picketing is in part an exercise of the right of free speech guaranteed by the federal Constitution. * * * But since picketing is more than speech and establishes a locus in quo that has far more potential for inducing action or nonaction than the message the pickets convey, this court has not hesitated to uphold a state’s restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity. * * *

Í (

“The state of Washington has by legislative enactment declared its public policy on the subject of organization of workers for bargaining purposes. * * * Under the so-enunciated public policy of Washington, it is clear that workers * * * shall be free from the coercion, interference, or restraint of employers of labor in the designation of their representatives for collective bargaining. Picketing of an employer to compel him to coerce his employees’ choice of a bargaining representative is an attempt to induce a transgression of this policy, and the state here restrained the advocates of such transgression from further action with like aim. To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon rights protected from state abridgment by the Fourteenth Amendment.
“* * * An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employees’ selection of a bargaining representative. * *
“Here, as in Giboney, the union was using its economic power with that of its allies to compel respondent to abide by union policy rather than by the declared policy of the state. * If respondent had complied with petitioners’ demands * * * he would have thereby coerced his employees. The employees would have had no free choice as to whether they wished to organize or what union would be their representative.”
Also, in Hughes v. Superior Court, supra (339 U. S., 460), it is said in the court’s opinion:
“* * * while picketing is a mode of communication it is *221 inseparably something more and different. Industrial picketing ‘is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. ’ * # # Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word. * * *
“* * * A state may constitutionally permit picketing despite the ingredients in it that differentiate it from speech in its ordinary context. * * * And we have found that because of its element of communication picketing under some circumstances finds sanction in the Fourteenth Amendment. * * * However general or loose the language or opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a state if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. * * *
“* * * The fact that California’s policy is expressed by the judicial organ of the state rather than by the Legislature we have repeatedly ruled to be immaterial. * * *
“ It is not for this court to deny to a state the right, or even to question'the desirability, of fitting its law ‘to a concrete situation through the authority given * * * to its courts. ’ # * * It is particularly important to bear this in mind in regard to matters affecting industrial relations which, until recently, have ‘been left largely to judicial lawmaking and not to legislation.’ ”
See also Local Union No. 10 v. Graham, supra (345 U. S., 192); International Brotherhood v. Hanke, supra (339 U. S., 470); Giboney v. Empire Storage & Ice Co., supra (336 U. S., 490); and Carpenters and Joiners Union v. Ritter’s Cafe, supra (315 U. S., 722).
*222 The question remains whether the public policy of Ohio regards picketing of the kind involved in the instant case as unlawful. It has not been argued and we will not therefore consider whether such picketing is forbidden by the provisions of Section 1331.01 et seq., Revised Code. In our opinion, picketing of the kind involved in the instant case is and will continue to be unlawful in Ohio until legislation making it lawful is adopted.
In the instant case, defendants by their picketing were endeavoring to advance their interests. This effort of defendants necessarily conflicted with the interests of plaintiffs in avoiding interference with their business and with the interests of plaintiffs’ employees in avoiding interference with their jobs. Furthermore, it conflicted with the public interest in avoiding industrial strife. There is nothing in the record to show what interests of defendants will be advanced by this picketing other than their interest in getting additional members for their union. For example, there is not even any evidence that, because of such things as payment of low wages or long hours of employment, plaintiffs are enjoying a competitive advantage over others, who are engaged in the same business and are maintaining union standards and employing those whom defendants represent. Under such circumstances, Ohio is certainly reasonable in determining that it is against its public policy to permit the use of its streets and sidewalks (dedicated and opened to facilitate public travel and transportation. Railway Co. v. Telegraph Assn., 48 Ohio St., 390, 27 N. E., 890, 29 Am. St.. Rep., 559, 12 L. R. A., 534; Callen v. Columbus Edison Electric Light Co., 66 Ohio St., 166, 180, 64 N. E., 141, 58 L. R. A., 782) to stir up industrial strife that does not exist and for the existence of which there is no apparent reason.
In our opinion, the holding of this court in Crosby v. Rath, 136 Ohio St., 352, 25 N. E. (2d), 934, requires the conclusion that the picketing involved in the instant case was unlawful and should be enjoined. It is true that the decision in the Crosby case might have been based upon the. fact that the picketing involved in that case had been accompanied by violence. However, the opinion “by the court” does not base the decision upon that ground but upon the ground that picketing is unlawful where there is no dispute between the employer and *223 his employees and where the picketing is conducted against the employer by persons having no connection with his employees and where it is conducted for the purpose of pressuring the employer to discharge his employees unless they become members of a union. Thus, in that case, this court reversed that part of the judgment of the Court of Appeals which had permitted picketing and boycotting and, in doing so, stated in an opinion “by the court”:
“ * * * it is not even contended that in the instant case there is any dispute whatsoever between the plaintiff and her employees * * *. On the contrary', the only dispute in the instant case is between the plaintiff and the defendants with whom the plaintiff’s employees have no connection. The thing upon which the defendants aré insisting is that the plaintiff discharge her employees unless they become members of one of the defendant unions. There is no reason or convincing aúthority sustaining the contention of the defendants that they have the right to engage in picketing or boycotting under such circumstances. * * * this must be the law * * * the instant situation is concededly unaffected by statute.”
It is argued that this court in Grimes & Hauer, Inc., v. Pollock, 163 Ohio St., 372, 127 N. E. (2d), 203, not only held that the public policy of Ohio does not oppose union shop agreements, but also questioned the reasons it had given for the Crosby case decision. There are statements in the opinion, but not in the syllabus, which might lend support to such conclusions. Those statements were made in answer to the contention that, because of Section 164(b), Title 29, U. S. Code, and because the common-law public policy of Ohio in effect establishes a “right to work” law, the state court could enjoin the picketing involved in that case. However, even if there had been a statutory “right to work” law in Ohio, the only effect of Section 164(b), Title 29, U. S. Code, would have been to prevent the National Labor Relations Board from acting in disregard of that law, as, for example, in authorizing execution or application of a union shop agreement. As this court recognized in the syllabus of the Grimes & Hauer case, the plaintiff therein was entitled to relief under provisions of the Labor Management Relations Act. Therefore the denial to Ohio of the right *224 to enjoin the picketing in the Grimes & Hauer case (a denial implied by reason of the doctrine of pre-emption announced in Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, 346 U. S., 485, 98 L. Ed., 228, 74 S. Ct., 161) would not, to use the words of Section 164(b), be “authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment.”
However, in our opinion, it is not necessary to determine and we do not determine in the instant case whether there is in Ohio, apart from any statutory or constitutional provision therefor, any common-law public policy which in effect establishes a “right to work” law. Assuming that there is no such common-law public policy in Ohio, the common-law public policy of Ohio may still regard peaceful picketing as unlawful where there is no dispute between the employer and his employees and where the picketing is conducted against the employer by persons who were never employed by him and who do not represent anyone that ever was so employed and where it is conducted for the purpose of pressuring the employer to compel his employees to become members of a union. As hereinbefore pointed out, it does; and an injunction against such picketing does not infringe upon the right to free speech guaranteed by the federal Constitution. In our opinion, the Fourteenth Amendment to the federal Constitution does not require a state to prohibit voluntary acquiescence in the demands of a union in order that such state may prohibit the union from exerting pressure by picketing to secure submission to such demands. Thus, it is said in the court’s opinion in International Brotherhood v. Hanke, supra (339 U. S., 470):
“Nor does the Fourteenth Amendment require prohibition by Washington also of voluntary acquiescence in the demands of the union in order that it may choose to prohibit the right to secure submission through picketing. In abstaining from interference with such voluntary agreements a state may rely on self-interest. In any event, it is not for this court to question a state’s judgment in regulating only where an evil seems to get most conspicuous.”
Also, in Hughes v. Superior Court, supra (339 U. S., 460), it is said in the court’s opinion:
*225 “If because of the compulsive features inherent in picketing, beyond the aspect of mere communication as an appeal to reason, a state chooses to enjoin picketing to secure submission to a demand for employment proportional to the racial origin of the then customers of a business, it need not forbid the employer to adopt such a quota system of his own free will. ’ ’
Since there is no claim that plaintiffs in the instant case were engaged in interstate commerce, the decisions in Grimes & Hauer, Inc., v. Pollock, supra, and Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, supra, are not applicable.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Stewart and Bell, JJ., concur.