UNITED FARM WORKERS ORGANIZING
COMMITTEE, AFL–CIO et al.,
Appellants,

v.

LA CASITA FARMS, INC., Appellee.

No. 14652.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 31, 1968.

Rehearing Denied April 9, 1969.

Dixie & Schulman, Robert E. Hall, Houston, for appellants.

Atlas, Schwarz, Gurwitz & Bland, McAllen, for appellee.

PER CURIAM.

Appellants, United Farm Workers Organizing Committee, AFL-CIO, its officers, representatives and members, challenge, as an unreasonable infringement of freedom of expression guaranteed by the Fourteenth Amendment to the Constitution of the United States, a temporary injunction entered by the district court of Starr County prohibiting appellants, as well as all persons acting in concert with them, from engaging in any picketing directed at the premises or employees of appellee, La Casita Farms, Inc. In this opinion appellants will be referred to as "Union," while appellee will be designated "Company."

The blanket prohibition of all picketing is based on several findings made by the trial court. At the outset, we discard the findings relating to absence of a labor dispute; violations of Art. 5207a, Vernon's Ann.Civ.St., popularly known as the "Right to Work Law"; occasional trespasses on Company property, and mass

picketing. In our opinion, these findings either lack support in the evidence or else are not a sufficient basis for the sweeping interdiction of all picketing.[1]

The injunction, if it is to be upheld, must rest on the finding that, since its inception, the picketing "has been so enmeshed with violence, threats of violence, harassment, intimidation, vandalism, and destruction of property, creating an imminently dangerous and aggravated situation," as to divest it of its status as constitutionally protected communication of the facts of a labor dispute.

■ The scope of review in cases involving the issuance of a temporary injunction is rather limited. In determining whether to grant or refuse a temporary injunction, the trial court is clothed with

1. (a) The trial court held that the picketing was not justified because none of Company's employees were members of Union. Even if the finding that no Company employees belonged to Union is supported by the evidence, which is doubtful, it is not true that picketing is lawful only where there is a conflict between an employer and his employees. "A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interests of all engaged in the same industry has become a commonplace." A.F.L. v. Swing, 312 U.S. 321, 326, 61 S.Ct. 568, 570, 85 L.Ed. 855 (1941). See also Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. 293, 296, 64 S.Ct. 126, 88 L.Ed. 58 (1943), setting aside an injunction in a case where members of a union picketed a restaurant operated by its owners without the help of employees. Thus the finding that none of Company's employees belonged to Union is irrelevant. Amalgamated Food Employees Union, Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); Cain, Brogden & Cain, Inc. v. Local Union No. 47, etc., 155 Tex. 304, 285 S.W.2d 942, 947 (1958).

Northeast Texas Motor Freight Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065 (1949) is inapplicable. That case merely holds that where the employer had no knowledge of the union's demands and had no opportunity to negotiate before picketing began, picketing was not justified. Here, Union made its demands known to Company before picketing began and requested a meeting. Company ignored this request.

(b) The conclusion that the picketing was aimed at realization of objectives condemned by the Right to Work Law is based on findings that Union was attempting to coerce Company to hire only Union members and to force Company's employees to join Union. There is no evidence to support these findings. It is undisputed that Union hoped to organize all agricultural workers in the county. Nothing in Article 5207a guarantees that employers shall have available a supply of unorganized labor. The statute contains no language making it unlawful for a union to aim for complete success in its organizational activities.

(c) Occasional trespasses will not support a blanket prohibition of all picketing at places where picketing is lawful. See Amalgamated Food Employees Union Local 590 v. Logan Valley Food Plaza, Inc., supra, par. (a), where an injunction against picketing was upset although the trial court found that on occasion the picketing took place in the employer's storeroom and on his porch.

(d) The presence of mass picketing will not justify the prohibition of all picketing. In Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941), all picketing was suppressed because, as a result of the background of violence against which it was carried on, "the momentum of fear generated by past violence would survive" even if future picketing would be carried on in a peaceful manner. There, any picketing would have generated the fear that past violence would be continued. Coercion resulted from the past violence. Such coercion as may be said to be implicit in mass picketing is generated solely by the presence of the crowd. Where the "momentum of fear" results solely from apprehension as to what persons assembled in large numbers may do in the future, as distinguished from what has happened in the past, the situation is significantly different. Fear caused by past violence associated with picketing will continue so long as the symbol of that violence, that is, the picketing itself, is present. Fear generated by the number of persons present must reasonably be expected to disappear when such number is reduced.

a wide discretion, and this Court is not free to upset the action of the trial court unless the record discloses a clear abuse of discretion. Railroad Commission v. Shell Oil Company, 146 Tex. 286, 206 S.W.2d 235 (1947). Except where the trial court has erroneously applied the law to the facts, Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc., 156 Tex. 408, 295 S.W.2d 873 (1956), the narrow confines of our power have been delineated by the Supreme Court of this State as follows: "If the petition does allege a cause of action and evidence tending to sustain such cause of action is introduced, then there is no abuse of discretion by the trial court in issuing the temporary injunction." Southwestern Greyhound Lines v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 270, 109 A.L.R. 1235 (1936). While the "abuse of discretion" formula has not escaped criticism,[2] it is well established and has been applied in cases involving temporary injunctions prohibiting picketing. Texas Foundries, Inc. v. International Moulders and Foundry Workers Union, 151 Tex. 239, 248 S.W.2d 460 (1952).

 He who searches for constitutional principles governing injunctions directed against picketing is destined to conduct his investigation in an area which, at best, must be described as a twilight zone.[3] The result of the judicial retreat from the ringing absolutes of Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), leaves one groping for the distinctions between "speech" and "conduct." But little is gained by attempting to fit picketing into any neatly labeled compartment. Whether picketing is "speech," "conduct," or a combination of the two, which might be designated as "speech-plus" or "communicative conduct," becomes irrelevant when we consider that a state may regulate not only conduct but even that most sacred form of "pure speech" which is designated as "political expression." Henkin, The Supreme Court, 1967 Term. Foreword: On Drawing Lines, 82 Harv.L.Rev. 63, 78–81 (1968).

Despite the conceptual difficulties involved, it is possible to glean from decisions of the United States Supreme Court the principles applicable to this case. These principles find expression chiefly in Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941), and Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58 (1943).

 In Meadowmoor, the labor dispute had been accompanied by disorder

2. "Much has been written on the question here presented. The adjudicated cases undoubtedly present many conflicts and inconsistencies. That such is the case is not at all surprising when it is considered that according to most authorities the question is one involving the exercise of 'judicial discretion' or the 'abuse of discretion.' We find it unnecessary to enter into a discussion of the meaning of these terms. There is no reasonable hope that such a discussion would to any extent clarify the subject. (The writer cannot escape the conviction that in practical effect the exercise of judicial discretion by a trial judge means doing as he pleases, unguided by law, while an abuse of such discretion is shown when an appellate court is of the opinion that he should have done otherwise.)" Funderburk, J., in Borger v. Mineral Wells Clay Products Co., 80 S.W.2d 333, 334 (Tex.Civ.App.—Eastland 1935, no writ).

3. "There is and there is not such a thing as peaceful picketing; it is and it is not a means of communication; it is and it is not constitutionally protected. It is likely to remain in this condition of constitutional uncertainty for a long time." Konvitz, Fundamental Rights of a Free People, 201 (1947). It is not surprising that Mr. Justice Frankfurter chose the cases dealing with the constitutional position of the right to picket as an illuminating illustration of his statement that, in the study of the "evolution of social policy by way of judicial application of Delphic provisions of the Constitution, recession of judicial doctrine is as pertinent as its expansion." Frankfurter, John Marshall and the Judicial Function, 69 Harv.L.Rev. 217, 231 (1955).

and violence to such an extent that the highest court of Illinois granted an injunction against all picketing. The Supreme Court, over the protests of three dissenting Justices, upheld the injunction. Mr. Justice Frankfurter, speaking for the majority, announced the principle that picketing "enmeshed" in violence was not constitutionally protected. While peaceful picketing is protected because of "faith in the power of an appeal to reason by all the peaceful means for gaining access to the mind, * * * utterance in a context of violence can lose its significance as an appeal to reason and become part of an instrument of force." 312 U.S. at 293, 61 S.Ct. at 555. Where picketing is set in a background of violence, it can "justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful." 312 U.S. at 294, 61 S.Ct. at 555.

■ The essence of the Meadowmoor holding is that courts may prohibit in order to prevent future coercion. This becomes clear when we consider the majority's reminder that "the power to deny what otherwise would be lawful picketing derives from the power of the states to prevent future coercion." 312 U.S. at 296, 61 S.Ct. at 556.

■ In Angelos it was pointed out that "the right to picket itself" cannot be taken away "merely because there may have been isolated incidents of abuse falling far short of violence occurring in the course of that picketing." 320 U.S. at 296, 64 S.Ct. at 127. And, in Meadowmoor, we are admonished that the "right to free speech in the future cannot be forfeited because of disassociated acts of past violence," and that peaceful picketing may not be enjoined "merely because it may provoke violence in others." 312 U.S. at 296, 61 S.Ct. at 556.

Union and Company are in agreement concerning the thrust of the Meadowmoor and Angelos holdings. But agreement disappears when the parties analyze the evidence in an attempt to determine whether, in this case, it was shown that the picketing was carried on against a "background," and in a "context," of violence.

Union takes the position that the record in this case discloses only "isolated" acts of violence. This contention is supported by the record if we limit our inquiry to acts of violence committed against the person. The evidence points to three shooting incidents, one car-rocking incident, one "grabbing" incident, and three or four attempts to "pick a fight" during a period of one year. The instances of threats of physical violence may also, without doing too much violence to the testimony, be described as being relatively few in number. There is no testimony that anyone was physically injured.

■ However, a reading of Meadowmoor reveals that, as used in Mr. Justice Frankfurter's opinion, the term violence is not limited to acts, or threats, of physical violence directed against persons. Violence may also be directed against property. "No one will doubt that Illinois can protect its storekeepers from being coerced by fear of window-smashings or burnings or bombings." 312 U.S. at 294, 61 S.Ct. at 555.

The record before us discloses that the labor dispute in this case was accompanied by numerous acts of vandalism. The number of flat tires on Company vehicles increased dramatically after the picketing began. Tires on personal cars of employees were slashed. Engines on several pieces of Company equipment were ruined by "scoring" due to the presence of sugar in the gasoline tanks. Company equipment was damaged by the improper manipulation of switches. A Company vehicle was stolen and burned. The car of the station agent of the railroad was destroyed by fire after she had not responded to a request by Union representatives for cooperation. A railroad trestle was burned and, after a number of per-

sons had unsuccessfully attempted to prevent the departure of a train, ties and spikes were found on the railroad tracks.

 It is true that there is testimony linking only one incident of damage to property to the activities of Union supporters. But a court "need not be so innocent of the actualities of * * * an industrial conflict * * * as to find in the Constitution a denial of the right" of a state court "to conclude that the use of force * * * was not the conduct of a few irresponsible outsiders. * * * The Fourteenth Amendment still leaves the state ample discretion in dealing with manifestations of force in the settlement of industrial conflicts. And in exercising its power a state is not to be treated as though the technicalities of the laws of agency were written into the Constitution." Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, supra, 312 U.S. at 295, 61 S.Ct. at 555.

Union next insists that the incidents relied on by the trial court were sporadic and isolated occurrences because the record discloses that there were periods unmarred by conduct which might be characterized as illegal or violent. However, there is testimony to support the conclusion that Union's picketing activities were confined to the various harvest seasons, with the periods between such seasons being characterized not only by an absence of violence, but by an absence of picketing. This fact justifies the inference of a connection between the picketing itself and the activities found by the trial court to create and "imminently dangerous and aggravated" situation.

Admittedly, the issuance of a temporary injunction may operate harshly, especially when all that is required to support the judicial condemnation of conduct is merely evidence which tends to sustain the alleged cause of action. But, as our Courts have recognized, this decision is no bar to Union's seeking a modification of the injunction by showing that the passage of time has deprived the picketing of its coercive influence. International Association of Carpenters and Joiners, etc. v. Sharp, 202 S.W.2d 506, 509 (Tex.Civ.App. —Galveston, 1947, no writ). And, in view of the limited scope of our review in temporary injunction cases, nothing in this opinion is to be taken as a ruling that the evidence before us would support the issuance of a permanent injunction embodying the terms of the temporary order before us now for review.

Union points to several instances of violence, or threatened violence, directed toward union supporters. However, Union's pleadings sought no affirmative relief.

The judgment of the trial court is affirmed.