INTERNATIONAL ASSOCIATION OF MACHINISTS, A. F. L. LOCAL 924 *v.* GOFF-MCNAIR MOTOR COMPANY.

5-280                                         264 S. W. 2d 48

Opinion delivered February 1, 1954.

*Edwin E. Dunaway,* for appellant.

*Rex W. Perkins,* for appellee.

ROBINSON, J. The appellees Goff-McNair Motor Co., Green Chevrolet Co., and Lyle Bryan Motor Co., hereinafter referred to as the employers, are automobile distributors and filed this suit to enjoin peaceful picketing by some of their employees who were out on strike. A temporary injunction was granted, and on final hearing it was made permanent. The Machinists Union, C. A. Buskel, and Willis Sisemore, bargaining agent and representatives of the employees, have appealed.

It is the contention of the employers that the union members by means of picketing were attempting to force an agreement providing for a closed shop. The employees claim they had withdrawn their demand that Article 16 of the proposed agreement, in effect providing for a closed shop, be incorporated in the contract, and that the employers were not acting in good faith in claiming that the suggested Article 16 had not been abandoned. During the negotiations the union submitted a proposed contract, Article 16 thereof being as follows:

"Union Members. The refusal of any or all employees who are members of the union to work with an employee who is not a member of the union will not be considered as a violation of this agreement."

In turn the employers demanded a provision in the contract embracing substantially Amendment 34 to the constitution of Arkansas, known as the Freedom to Work Amendment; Act 101 of the General Assembly of 1947, the enabling act for Amendment 34; and Act 143 of 1943, known as the Anti-Violence Act. The parties did not break off negotiations by agreement, but Mr. Buskel, who was the chief negotiator among the representatives of the employees, at the end of the meeting on July 30 stated he would let the employers know when it would be agreeable to hold the next meeting. He contacted

the employers no further, and on September 17 the union members went out on strike and started picketing the employers' place of business.

Even if the employers did demand that an amendment to the constitution and certain acts of the legislature be written into the contract, this would not be asking the union to agree to something unlawful because the constitution and laws of the state would be a part of the contract regardless of whether they were mentioned in the written agreement. On the other hand this court has held that the demand by a union that a collective bargaining agreement contain a provision in violation of Amendment 34 to the Constitution and Act 101 of 1947, coupled with picketing in an attempt to enforce such demand, is grounds for the issuance of an injunction prohibiting such picketing. *Self* v. *Taylor,* 217 Ark. 953, 235 S. W. 2d 45; *Local No. 802* v. *Asimos,* 216 Ark. 694, 227 S. W. 2d 154; *Lion Oil Co.* v. *Marsh,* 220 Ark. 678, 249 S. W. 2d 569. See also *Giboney* v. *Empire Storage & Ice Co.,* 336 U. S. 490, 69 S. Ct. 684, 93 L. Ed. 834.

The trial court prepared a written opinion which shows that the utmost care, attention, and study was given to the case; and it is the Chancellor's opinion that the weight of the evidence proves the employees had not abandoned their demand for a contract providing for a closed shop in violation of the laws of this state. In regard to the facts as shown by the record, we quote from the able opinion of the trial court:

"To resolve the matter a consideration of the proof is necessary. The crucial meeting seems to have been that of May 8, the 5th negotiating session. Both before and after that meeting, according to McNair, Pratt, Bryan, Dickson and Duty, the latter two being attorneys representing some of plaintiffs at the meetings but not at the trial, Article 16 was discussed at great length and always as related to, but say the plaintiffs, in conflict with Amendment 34 and Act 101. It was the insistence of the companies that Article 16 should be countered by provisions substantially incorporating the

freedom to work amendment or that the article should be dropped. They say that on May 8 defendant Buskel proposed that the Union would drop Article 16 if they would drop the incorporation of provisions consonant with Amendment 34 and Act 101. In short, they say Buskel's offer was only conditional, was never unequivocally withdrawn and was in fact insisted upon up to and including the last meeting on July 30. Opposed to this is testimony in chief of Buskel. He says that he officially receded from Article 16 on May 8, has not insisted upon it since, and is not today (the day of trial) demanding a closed shop, nor that Union members quit if non-Union men are working. Defendant Willis Sisemore, and witnesses Bill Cox and Roy Hillion, who attended most of the meetings, confirm the withdrawal of Article 16 on May 8, and that they would not refuse to work with a non-Union man; but each of these three also testified that his statement on the witness stand is the first time he had ever said he would work in an open shop; and Sisemore testified he has never heard Buskel express agreement on a contract provision for an open shop. Cox, as did the others, took the oath of Union obligations and testified that a part of that obligation is not to work with a non-Union man. Hillion testified there was nothing in the obligation as to working or not working with non-Union men. Mr. Cox also answered, on cross examination, that he remembered the conditional withdrawal by Buskel and upon being asked if this withdrawal was thereafter unreservedly made, he first answered 'no', later changed his answer to the affirmative, and it is possible his apparent contradiction was due to confusion or misunderstanding.

"The testimony of Buskel is interesting. A substantial·portion of his cross examination consisted of directing to him a number of questions embracing his statements made at various negotiations meetings and asking him if he made the statements. It would be well to note here the apparent confusion that arose at the trial over the stenographic transcripts of these meetings. The Court declined to require plaintiffs' counsel

to make these transcripts available to defense counsel for the reason that they were private property procured and paid for by plaintiffs, and available to defendants since their taking, on the same terms. After some discussion, counsel for plaintiffs offered to place any one or all of the transcripts into evidence, and this defense counsel would not agree to. The Court is not disposed, even if he deemed it proper, which he does not, to speculate upon the apparent inconsistency of defendants' eminent counsel in asserting a right to examine the transcripts while declining to agree to their being put into the evidence. In any event, there is no doubting the propriety of their use as bases for cross examining Buskel, and the Court entertains no doubt as to the accuracy of the portions so used. Mr. Buskel made it plain that such questions were distasteful to him, and it is in evidence that he made the reporting of the meetings a basis for unfair labor practice charges against defendants before the NLRB; a proposition which has heretofore been rejected by that body.

"To return to this line of questioning: Some statements attributed to him Buskel denies; others, he restricts his denial to his having said them at the initial meeting on April 8; still others, he concedes he possibly might have said something like that. Nearly all of the statements tend to illustrate his position on compulsory unionism; 'That the boys in the shop would take care of non-Union men'; that if trouble were encountered with an employer 'someone would start throwing rocks pretty quick'; 'that there would be some knocking of heads'; that if he is going to deal with an employer he is going to deal with him 100% union; that if an employer were faced with the problem of Union employees refusing to work with non-Union men, but unable to fire them on that account, his answer is 'get all Union men'. Apart from this type of examination, Buskel in spontaneous testimony states that he has never written a contract where Union men will work with non-Union men and he would never write one. This, despite other of his testimony that he has negotiated and now has operative in other states, open shop contracts.

"The Court finds it impossible, under fairest appraisal, to reconcile Buskel's inconsistency in testimony; his assertion of recession from Article 16 and his willingness to negotiate an open shop contract with his statements at negotiations and at trial, which to the Court make inescapable the conclusion that he was at all times demanding a closed shop, if not in the express terms of Article 16, then certainly in his conception of how it should and would be applied. His apparent dislike for lawyers, regular courts of law, and preservation by amanuensis of contract discussion, is certainly his prerogative, but it smacks of a want of candor and a distaste for open covenants openly arrived at, that casts a shadow upon the otherwise clear light of credibility. Even if other proper considerations were laid aside and only under the test of mere preponderance of testimony, making due allowance for the prejudice that undoubtedly exists in some degree on both sides, it must be concluded that the allegations of the complaint relative to defendants' demands for a closed shop are established. This finding made, it follows that the picketing for an unlawful purpose—to force a closed shop—must be permanently enjoined." We can not say the trial court's findings are contrary to a preponderance of the evidence.

We have not overlooked the recent case of *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union,* 346 U. S. 485, 74 S. Ct. 161, 98 L. Ed. 228, dealing with the jurisdiction of the state courts to issue injunctions against picketing in labor disputes. But here the Chancellor is being sustained in the finding that the picketing is for the purpose of forcing the employers to agree to an unlawful provision in a collective bargaining agreement. The National Labor Relations Act does not apply to the situation existing here. In *International Union* v. *Wisconsin Board,* 336 U. S. 245, 69 S. Ct. 516, 93 L. Ed. 651, it is said: "It seems to us clear that this case falls within the rule announced in *Allen-Bradley Local* v. *Wisconsin Employment Relations Board,* 315 U. S. 740, 62 S. Ct. 820, 86 L. Ed. 1154, that the state may police these strike activities as it could police the strike activities there, because 'Con-

gress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board.' There is no existing or possible conflict or overlapping between the authority of the Federal and State Boards, because the Federal Board has no authority either to investigate, approve, or forbid the union conduct in question. This conduct is governable by the State or it is entirely ungoverned." Likewise the National Labor Relations Act does not give the federal Board authority to "investigate, approve, or forbid" the union conduct in the case at bar.

Appellants contend that even if the finding of the Chancellor is sustained, the decree should be modified so as to prohibit only picketing for the purpose of obtaining a closed shop; but we think the language of the court in *Self* v. *Taylor, supra,* is applicable: " 'Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted.' The injunction does not prevent appellants from bargaining in good faith for a legal contract. If legitimate differences arise not connected with the closed shop demand, which would warrant peaceful picketing, they may apply to the Chancery Court for appropriate modification of the injunction. If such modification is erroneously denied, an appeal always lies to this court."

Appellant also contends that the court erred in two instances with reference to the admissibility of testimony. We have examined these assignments of error and find they are without merit.

While the cause was pending on appeal and before it was submitted, the appellee filed a motion to dismiss on the ground that the strike had been called off by the employees and the question involved is therefore moot. Appellant resisted this motion on the ground that in the event it should be held by this court that the injunction should have been dissolved by the trial court, there might be an element of damages involved; and further that the controversy between the parties had not been settled, and that substantial rights would be affected

by the outcome of this case. We therefore considered the case on its merits.

Affirmed.