INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL
No. 878 v. BLASSINGAME.

5-1010                                        293 S. W. 2d 444

Opinion delivered June 25, 1956.

[Rehearing denied October 1, 1956.]

*Tom Gentry,* for appellant.

*Catlett & Henderson,* for appellee.

J. SEABORN HOLT, Associate Justice.   This appeal is
from a decree permanently enjoining appellant, Inter-
national Brotherhood of Teamsters, Chauffeurs, Ware-
housemen and Helpers of America, Local No. 878, from
picketing the retail establishment of intervener, Ralph
Royse, and the places of business of all other persons
similarly situated.

Material facts appear not to be in dispute.   Some of
the members of appellant, Local Union 878, were involved
in a labor dispute with the Terry Dairy Products Com-
pany, Inc., over wages, hours and working conditions.
The Terry Dairy Company sold milk and other dairy
products at wholesale prices to appellee, M. E. Blass-

ingame (who has gone out of business since the present litigation began), intervener, Ralph Royse, and other retail establishments such as restaurants and cafes which sell these milk products to their customers. In an effort to persuade the public not to purchase the products of the Terry Dairy Company, appellant placed pickets at the entrances of some of the retail establishments, including that of Royse, selling Terry products. These pickets carried a sign which read: "Employees of Terry Dairy Products Co. on strike for a living wage. This establishment serves Terry Dairy Milk. Please don't drink it." As indicated, a picket carrying the above sign was placed near the entrance of Blassingame's place of business and also at Royse's place of business. The complaint of Ralph Royse, alleged, in effect, that he was a wholesale customer of Terry Dairy Products Company, Inc., from which company he purchased dairy products for resale to the public at his place of business, 701 Broadway, Little Rock; that the appellant union, acting through its members, picketed his place of business and thereby deprived him of many of his customers and trade solely because he offered for sale products distributed by Terry Dairy; and that he had no labor dispute with the appellant union. Appellant answered, in effect, denying every material allegation in the complaint, and in addition that the trial court lacked jurisdiction for the reason that the jurisdiction over the subject matter as alleged in the complaint had been preempted by the National Labor Relations Act, as amended (Taft-Hartley Act), U. S. C. Title 29, S. 151, et seq, and that the right to advertise their grievances against Terry Dairy in a peaceful manner was guaranteed under the constitution of the United States, etc., and prayed that the injunction be dissolved. As indicated, the undisputed facts show that Royse had no labor dispute whatever with Local Union 878 above, and that there is no dispute between him and his own employees, none of whom belong to the above union. The picketing is not on the premises at the Terry plant—is entirely disconnected with it, but is on, or near, the premises of the re-

tailer, Royse. It further appears that there was no violence and that the picketing was peaceful.

For reversal appellant relies on two points: "1. Product picketing in a peaceful manner is not picketing for an unlawful purpose, and cannot be enjoined. 2. The evidence does not reflect that appellant is bringing this action for himself and all others similarly situated."

## I.

We do not agree with appellant's first contention. We are here confronted with what is obviously, in effect, a secondary boycott — "A secondary boycott occurs when striking employees, in addition to picketing the premises of their own employer, also establish picket lines around the premises of others not so directly interested in the labor dispute, such as customers to whom the primary employer sells or manufacturers from whom he buys," *Boyd* v. *Dodge*, 217 Ark. 919, 234 S. W. 2d 204. There is no proof whatever in this case that the Terry Dairy Company was engaged in interstate commerce, or that a Federal question is involved. Such proof is a primary jurisdictional requisite as was said by the Supreme Court of the United States in *United Construction Workers* v. *Laburnum Construction Corp.*, 347 U. S. 656, 98 L. Ed. 1025, 74 S. Ct. 833, and this language was used: "It (National Labor Relations Act, as amended) sought primarily to empower a federal regulatory body, through administrative procedure, to forestall unfair labor practices by anyone in circumstances *affecting interstate commerce*. In circumstances, in effect, such as are presented here, the public policy of this state as affects picketing by labor unions was declared in the recent case of *International Brotherhood of Electrical Workers, Local Union No. 295,* v. *Broadmoor Builders, Inc.*, 225 Ark. 260, 280 S. W. 2d 898, we there held: "Headnote 1. Labor—Peaceful Picketing, Public Policy.—Picketing—which prevents the delivery of merchandise or other articles to persons or places entirely disconnected from any picketing that might be legal as against the limited person or place to be picketed —

declared to be against the public policy of Arkansas.''
In the Broadmoor Case above, in which we sustained an
injunction against picketing, as unlawful, we also pointed
out in Footnote No. 7, that the Supreme Court of the
United States has held that State Courts are given the
right to determine public policy and to ''set the limits
of permissible contests open to Industrial combatants.''

## II.

As to appellant's second point, little need be said.
The facts showed that pickets were placed at the en-
trances of not only Blassingame's place and Royse's
place, but at other retail establishments, and appellee
says: ''The plaintiff files this complaint for himself and
all others similarly situated, the same constituting a
class of citizens who offer Terry Products for sale to
the public and who are being picketed or are under the
threat of picketing by virtue of said fact. It is imprac-
ticable to bring all of the members of the class before
the court; the filing of separate suits by each of the
members of the class would involve a multiplicity of
suits . . . '' We hold that appellee, Royse, here, was
acting not only for himself but for a class and as a
member of the class for which he so acted, and that it
was proper for him to bring the present suit for the
benefit of all. What we said in *Westbrook* v. *McDonald*,
184 Ark. 740, 43 S. W. 2d 356, is in point here, ''Where
the question is one of a common or general interest of
many persons, or where the parties are numerous, and
it is impracticable to bring them all before the court
within a reasonable time, one or more may sue or de-
fend for the benefit of all. Section 1098, Crawford &
Moses' Digest [Now § 27-809 Ark. Stats. 1947]. But
the person who so acts for a class must be a member of
the class for whom he acts.''

We conclude, therefore, that the decree was correct
and we affirm.

Justice McFADDIN dissents.

ED. F. McFADDIN, Associate Justice (Dissenting).
The appellants were engaged in picketing an establish-

ment where Terry Dairy products were being sold: there was no mass picketing and there was no violence. The majority opinion in this case holds that the Chancery Court was correct in enjoining such picketing on the theory of a secondary boycott. I find myself unable to agree with that conclusion; hence this dissent.

There is a distinction between (a) a secondary boycott and (b) product picketing. A *secondary boycott* exists when the workmen on strike against one establishment attempt by picketing to induce *the workmen* of another establishment to cease working for their employer.[1] *Product picketing* is an effort by striking workmen of one establishment to persuade *the public* to cease buying the product of the establishment against which the workmen are on strike, but with no effort on the part of the strikers to influence the workmen of the place where the picketing is being conducted to cease from working at that establishment. I think that in the case at bar the picketing was *product picketing* rather than a *secondary boycott*.[2] But I propose to show that the majority opinion is wrong in this case whether the picketing was a *secondary boycott* or *product picketing*.

I. *Secondary Boycott*. If the picketing in the case at bar be regarded as a secondary boycott, then it is my understanding of the Taft-Hartley Act (U. S. C. A. Title 29, Section 158) that all jurisdiction in regard to a secondary boycott—absent mass picketing and violence—is in the National Labor Relations Board. *Capital Service* v. *N. L. R. B.,* 347 U. S. 501, 98 L. Ed. 887, 74 S. Ct. 699. The recent case of *Auto Workers* v. *Wisconsin Employment Relations Board,* 351 U. S. 266, 76 S. Ct. 794, 100 L. Ed. 1162, decided by the U. S. Supreme Court on June 4, 1956, inferentially so holds.

The majority opinion in the case at bar says the picketing here was a *secondary boycott,* but that no interstate

---

[1] See U. S. C. A. Title 29, Section 158, sub (b) (4); and see *International Brotherhood* v. *N. L. R. B.,* 341 U. S. 694, 95 L. Ed. 1299.

[2] The majority opinion says of Royse's complaint: ". . . that the appellant union, acting through its members, picketed his place of business and thereby deprived him of many of his customers and trade solely because he offered for sale products distributed by Terry Dairy; and that he had no labor dispute with the appellant union."

commerce was shown to have existed so the State Court had jurisdiction. I understand that the old distinction, that actual movement of goods is necessary to make interstate commerce, has been changed both by the Wagner Act and the Taft-Hartley Act. It is not a question of whether the goods *actually moved* in interstate commerce, but whether the picketing ". . . would burden or obstruct commerce . . . or tend to burden or obstruct . . . the free flow of commerce." Such is the language of the Taft-Hartley Act as contained in U. S. C. A., Title 29, Section 142. So, if picketing here be a secondary boycott, it is not necessary to allege the actual movement of goods in interstate commerce, because the jurisdiction to enjoin a *secondary boycott* is exclusively in the National Labor Relations Board, absent mass picketing or violence. The effect here would be to reverse the decree and dismiss the injunction.

II. *Product Picketing.* If we regard the picketing here involved as product picketing—and I do so regard it—then there is nothing illegal in such picketing: it comes under the right of free speech guaranteed by the Constitution. Here are some cases from State courts that recognize the legality of *product picketing*: *Goldfinger* v. *Feintuch* (N. Y. 1937), 276 N. Y. 281, 11 N. E. 2d 910, 116 A. L. R. 477; *Fortenbury* v. *Superior Court* 16 Cal. 2d 405, 106 Pac. 2d 411; *Ohio Valley Adv. Corp.* v. *Union Local 207,* 138 W. Va. 355, 76 S. E. 2d 113; and *Galler* v. *Slurzberg,* 27 N. J. Super. 139, 99 Atl. 2d 164.

In the last cited case (*Galler v. Slurzberg*) the New Jersey Court said:

"We have here a form of secondary picketing known as product picketing — picketing directed against the product itself and not against the person selling it. Peaceful picketing of the place of business of a merchant selling the product of a manufacturer who is a party to a labor dispute, for the purpose of asking the public to refrain from purchasing such product, is permissible."

To sustain the quoted statement, thirteen cases are cited from various jurisdictions and also some textbooks and some annotations.

The majority opinion in the case at bar says that the public policy of Arkansas — as announced in *International Brotherhood* v. *Broadmoor,* 225 Ark. 260, 280 S. W. 2d 898—applies here, and justifies the injunction against product picketing. I cannot agree with such conclusion of the majority. *International Brotherhood* v. *Broadmoor* involved picketing against *the employer* at a place removed from the scene of employment; and we held that the effect of such picketing was to interfere with the normal use of the highways by other persons. *Remote picketing* against the employer — as in the Broadmoor case — is entirely different from *product picketing,* as in the case at bar. Under the guise of public policy, I seriously doubt if a State court still has jurisdiction to enjoin against product picketing, absent, as here, any mass picketing or violence.

I am bound to try to follow the holdings of the United States Supreme Court; and under such holdings — as I understand them — I think the decree here should be reversed and the injunction dissolved.