MITCHAM *v.* ARK-LA. CONSTRUCTION Co.

5-3776                                      397 S. W. 2d 789

Opinion delivered December 20, 1965.

[Rehearing denied January 31, 1966.]

*McMath, Leatherman, Woods & Youngdahl,* for appellant.

*William I. Prewett,* for appellee.

·BERNARD WHETSTONE, Special Associate Justice. This proceeding originated in this court as a Petition for writ of Prohibition. During oral argument it was stipulated that the entire matter be treated as an appeal and considered and decided here on its merits (in view of the time element involved in the facts of the case and also in view of the question involved being one of public interest).

In this converted form, involved is the question of the jurisdiction of the Chancery Court below to entertain a petition on behalf of building construction contractor(s) to enjoin (peaceful) picketing by a labor organization at a building construction project and to issue an injunction forbidding such picketing.

On July 8th, 1965, Mid South Homes of Arkansas, Inc., contracted to construct an apartment project for the

Malibu Corporation of El Dorado, Arkansas. This contract was assigned without consideration by Mid South to Ark-La Construction Company, Inc. The builder contemplates completion in January, 1966.

On August 25th, 1965, Carpenters Local Union No. 1684 began picketing the construction site with signs alleging low wages and improper working conditions. On August 26th, Mid South and Ark-La jointly filed a complaint in the Chancery Court of Union County that the picketing was unlawful and asking that it be enjoined. On the same day a temporary restraining order issued banning all picketing by the Carpenters Local at the site.

On September 1st, 1965, the defendant Local filed motions asking the court to dismiss the complaint and restraining order because the dispute was subject to the exclusive jurisdiction of the National Labor Relations Board under the National Labor Relations Act, 29 U. S. C. A. Sections 141-148. Plaintiff Mid South admitted that *it* was subject to the jurisdiction of the National Labor Relations Board and moved for a nonsuit on September 3rd leaving plaintiff Ark-La Construction Company, Inc., as the sole plaintiff with the contention that Ark-La, due to insufficient volume of interstate inflow and/or outflow value output (to be discussed later in this opinion) was not. Defendant contended that even though plaintiff Mid South took a nonsuit, that the relationship (identity of officers, ownership etc.) of the plaintiffs was so close and interrelated, that the two should be treated as one (thus placing both within the jurisdiction of the National Labor Relations Board). Another contention by the defendant was that, in any event, the value output of the remaining plaintiff (Ark-La) was "arguably" adequate to come within N. L. R. B. standards and thus still pre-empt State Court jurisdiction (since if "arguably" adequate, it remained for the N. L. R. B. to first determine that it had no jurisdiction before any State Court could proceed).

In a final decree, the lower court found that the picketing violated Amendment 34 to the Constitution of

Arkansas (so-called "Freedom To Work" Amendment), that no "labor dispute" existed, and that Ark-La is not subject to N. L. R. B. jurisdiction, and the injunction was made permanent.

On September 8th the defendant below (Carpenters Local) filed a petition for temporary Writ of Prohibition here.

Proceeding to the merits:

Petitioner (whom we will hereinafter refer to as appellant) contends that the conduct in dispute and the parties are subject to the exclusive and primary jurisdiction of the National Labor Relations Board and that the lower (State) Court was thus without jurisdiction relying on such authorities as Taylor v. Bean, 234 Ark. 932, 355 S. W. 2d 602 (1962); International Bro. of Teamsters v. Blassingame, 226 Ark. 614, 293 S. W. 2d 444 (1956) (dissenting opinion); Article VI, cl 2, of the United States Constitution; Garner v. Teamsters Union, 346 U. S. 485 (1953); Weber v. Anheuser-Busch, Inc. 348 U. S. 468 (1955); San Diego Bldg. Trades Council v. Garmon 359 U. S. 236 (1959); Local 438 v. Curry, 371 U. S. 542 (1963); Liner v. Jafco, Inc. 375 U. S. 301 (1964); N. L. R. B..v. Reliance Fuel Oil Corp., 371 U. S. 224 (1963); 12 Arkansas Law Review 354.

Appellant argues that, considered alone and separate from Mid South, that Ark-La is "arguably" within N. L. R. B. standards for jurisdiction ($50,000.00) stating "when an employer's business is newly established and no annual figures are available, the Board customarily projects over a full year whatever figures on business volume are available . . . . It is still established that in less than two months there have been interstate purchases of $2,700.00, interstate wages amounting to at least $1,200.00, and interstate subcontracts totaling over $20,000.00. Two months experience at this rate will project to a $143,400.00 total for 12 months. Or, giving the respondent the benefit of every ambiguity, if the $20,000.00 figure applies to all seven months of the pro-

jects schedule, the projected interstate inflow figure would total $57,684.00.''

The respondent (whom we will refer to hereinafter as appellee), on the other hand, contends that the Garmon Case and many authorities relied on by appellant, were decided prior to the effective date of the Labor Management Reporting and Disclosure Act of 1959 (29 U. S. C. A. Sec. 164) and that ''in passing the 1959 Act Congress afforded relief for parties whose disputes fell within the so-called ''no man's land'' created by the preemption doctrine under which the parties could not be heard either by the N. L. R. B. or State Tribunals. The 1959 Act gave the State Courts authority to exercise jurisdiction over, employers whose activities did not substantially affect commerce within the jurisdictional standards adopted by the N. L. R. B. In other words, where the N. L. R. B. has adopted a jurisdictional standard establishing certain requirements before it will assert jurisdiction, the State may act in this area''; and appellee relies on such authorities as Marine Engineers Ben. Asso. v. Interlake S. S. Co., 370 U. S. 173, 176; cites Austin v. Painters Dist. Council # 22, 339 Mich. 462, 64 N. W. 2d 550, (Appeal dismissed 348 U. S. 979); Machinists Local No. 924 v. Goff McNair Motor Company, 223 Ark. 30, 264 S. W. 2d 48 (1954); and in a supplemental brief cites such cases as Fair Share Organization, Inc. v. Morris Mitnick, 188 N. E. 2d 840 (Ind. 1963); Cox v. Sup. Ct. of San Berandino County, 346 p. 2d 15 (1959 California).

It was stipulated in the lower court that Mid South had a sufficient inflow and/or outflow of goods or services to put it under the jurisdiction of the National Labor Relations Act. (It is unquestioned that according to the N. L. R. B. standards and the classification involved in the present litigation that this amount is ''in excess of $50,000.00.); that prior to the filing of the complaint in the lower court that neither plaintiff made any effort to obtain any relief from the National Labor Relations Board nor attempted to obtain a determination from it as to whether the subject of this action was within the

jurisdiction of the N. L. R. B.; that the incorporators and stockholders of Mid South were Norman Pearah, G. O. Westbrook, V. J. Casamento, Jr. and Larry Cooper and that the incorporators and stockholders of Ark-La are Carolyn Pearah and the same Norman Pearah and V. J. Casamento, Jr. (the common stockholders and the incorporators being Norman Pearah and V. J. Casamento, Jr.); that the same parties are President and Vice-President of both corporations; that the defendant below, Carpenters Local Union No. 1684 is a labor organization in which employees participate, which govern grievances, conditions of work, etc.

V. J. Casamento, Jr. was called by the *defendant* and testified that he was Vice-President of Ark-La as well as Mid South and that he was employed by Ark-La; that Mid South is engaged in the business of building and selling residences in Louisiana and Arkansas; that currently the stockholders is Ark-La are the same stockholders as Mid South i.e. Norman Pearah, Carolyn Pearah and V. J. Casamento, Jr.; there is a different secretary and treasurer of each company; Mid South entered into a contract with Malibu for construction work in El Dorado and there has been a sign at the site of the construction stating "Builders, Mid South Homes of Arkansas, Inc."; Mid South was asked to sign the contract and also Casamento and Pearah signed the contract personally and then the contract was assigned to Ark-La without consideration for performance; Ark-La is qualified to do business in the State of Arkansas with a general contractor's license with the State of Arkansas and Mid South does not have such a license; Malibu wanted substantial assets to protect them in the course of construction and since Ark-La was a new company, Mid South had to sign the contract and also Pearah and Casamento had to personally sign it; Malibu agreed to pay Ark-La $246,000.00; Ark-La is going to get the money to build the job with Malibu; all Mid South owns in the way of construction equipment right now is a pick-up truck; Ark-La owns no construction equipment; Ark-La is handling the job mostly through subcontract; some

subcontractors operate out of Louisiana and others out of Arkansas; this is the first venture for Ark-La which was organized in May of 1965.

It was stipulated that Carpenters Local No. 1684, the defendant, did not represent any employee of Mid South or Ark-La.

Casamento testified further that there was no protest made about low wages on the job in his negotiations with the labor representatives of the defendant but that the only protest was the failure to use union labor exclusively; that Ark-La was paying union scale to the people that worked on the job; the two subcontracts with the Louisiana firms totaled a little less than $21,000.00; Ark-La will not have a purchase inflow of goods and services across the state line of more than $50,000.00 during its current fiscal year nor an outflow of more than $50,000.00; Mid South and Ark-La have the same office address in Crossett; Norman Pearah and Carolyn Pearah are husband and wife; the material for this Malibu job will be purchased in the name of Ark-La and is going to cost more than $50,000.00.

D. R. White testified that he was Vice-President of Malibu and that the estimated cost of the job in the job was $240,000.00; contract was signed with Mid South with personal endorsements because he did not want to sign with Ark-La since it was such a thin corporation.

There was no other testimony.

Since the enactment of the National Labor Relations Act a series of United States Supreme Court decisions have made it abundantly and increasingly clear that the federal government is vigorously jealous of its jurisdiction in the areas involved in the present litigation. Probably the outstanding and landmark case on this subject is that of San Diego Building Trades Council, etc. v. Garmon 79 S. Ct. 773, 359 U. S. 236, 1 L. Edi. 2d 860. The following quotation from that opinion is indicative:

"At times it has not been clear whether the particular activity regulated by the States was governed by Section 7 or Section 8 or was, perhaps, outside both of these sections. *But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relaions Board.* What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board, See, e.g., Garner v. Teamsters, etc. Union, 346 U. S. 485, especially at pages 489-491, 74 S. Ct. 161, at pges 165-166, 98 L. Ed. 228; Weber v. Anheuser-Busch, Inc., 348 U. S. 468, 75 S. Ct. 480, 99 L. Ed. 546.'

\* \* \* \* \*

'*When an activity is arguably subject to Section 7 or Section 8 of the Act, the States as well as the Federal Courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.*'

To require the States to yield to the primary jurisdiction of the National Board does not insure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate Federal judicial review, that conduct is protected by Section 7, or prohibited by Section 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. However, the Board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. This was the basic problem underlying our decision in Guss v. Utah Labor Relations Board, 353 U. S. 1, 77 S. Ct. 598, 609, 1 L. Ed. 2d 601. In that case we held that the failure of the National Labor Relations Board to assume jurisdic-

tion did not leave the States free to regulate activities they would otherwise be precluded from regulating. *It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act. In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. The withdrawal of this narrow area from possible state activity follows from our decisions in Weber and Guss.* The governing consideration is that to allow the States to control activities that are potentially subject to Federal·regulation involves too great a danger of conflict with the National Labor policy.'

'In the light of these principles the case before us is clear. Since the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of Section 7 or Section 8 of the Act, the State's jurisdiction is displaced.'' (Emphasis supplied)

As noted previously, appellee in the present instance argues "it is important to note that the Garmon Case was decided prior to the effective date of the Labor Management Reporting and Disclosure Act of 1959."

It is also to be remembered that appellant contends that both the issue of (a) interrelation and overlapping of a party admittedly subject to the jurisdiction of the N. L. R. B. with one who may not be so as to cause the Board to treat the two as a whole and thus give it jurisdiction over both and (b) the question of the dollar value inflow and/or outflow of business in interstate commerce, are "arguably" within the jurisdiction of the N. L. R. B.

In view of all this we are impressed with the decision of the Supreme Court of the United States handed down March 15, 1965, in the case of Radio and Television

Broadcast Technicians Local Union No. 1264, International Brotherhood of Electrical Workers, AFL-CIO, et al v. Broadcast Service of Mobile, Inc. 380 U. S. 255.

For a clearer understanding of what was involved and decided in that case it is necessary to have additional background information (appearing in the opinion of the State Court (Alabama) from which the appeal came).

The Circuit Court of Mobile County, Alabama, in equity, dissolved a temporary injunction and dismissed the cause on the grounds that the court's jurisdiction was pre-empted by the National Labor Relations Act. A radio station, which was a member of a chain of stations, had obtained the injunction against Local No. 1264, International Brotherhood of Electrical Workers, et al, to restrain picketing when the radio station refused to employ a certain radio engineer and to require the radio station to bargain through the Local. The radio station also contended that the Local was attempting to force it to violate the Alabama Right to Work Act and other complaints. The Supreme Court of Alabama, in an opinion dated December 12, 1963, 276 Ala. 93, 159 So. 2d 452, reversed the lower court holding that the State Court did have jurisdiction. One of the major reasons for the position taken by the Supreme Court of Alabama was reliance upon the 1959 Amendment to the Labor Management Relations Act of 1957 which is so strongly relied upon by the appellee in the present case. We quote from that opinion:

''Appellant, on the other hand, argues that the entire field of labor relations has not been pre-empted by federal legislation; that there remains a substantial area in which the states may act, and that in fact the activity complained of here has been expressly left to the states by Congress through the enactment of an amendment to the Labor Management Relations Act of 1947, as amended in 1959 (29 U. S. Code Ann § 164 (c) (1) and (2), providing:

'Section 164(c) (1):

"The Board, in its discretion, *may,* by *rule of decision* or by published rules adopted pursuant to the Administrative Procedure Act, *decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction*: Provided, that the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959." (Emphasis supplied.)'

'Section 164(c) (2):

"Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction." '

"We are constrained to agree with appellant. It seems to us that the National Labor Relations Board has, in the words of the above amendment, "declined to assert jurisdiction over any labor dispute involving" the class or category of employers to which appellant belongs, thus leaving such disputes within the jurisdiction of the state court."

In reversing (the Alabama Court) the Supreme Court of the United States stated:

"It is contended that although the annual gross receipts of WSIM are below the National Labor Relations Board's jurisdictional minimum of $100,000 per year for radio stations, WSIM is an integral part of a group of radio stations owned and operated by Charles W. Holt and the Holt Broadcasting Service and that the annual receipts of the common enterprise are in excess of $100,000, which is determinative under the Board's standards. Stating that every court has judicial power to determine its jurisdiction and that the union failed

to allege "that the appellant's (WSIM) gross business exceeded $100,000 per annum," the Alabama Supreme Court held that the state courts had jurisdiction over WSIM's complaint. We granted certiorari. 379 U. S. 812. The judgment below must be reversed.'

'Although a state court may assume jurisdiction over labor disputes over which the National Labor Relations Board has jurisdiction but declines to assert it, 29 U. S. C. A. §§ 164 (c) (1) and (2) (1958 ed., Supp. V), there must be a proper determination of whether the case is actually one of those which the Board will decline to hear. *Hattiesburg Building Trades Council* v. *Broome,* 377 U. S. 126.'

'The Board will assert jurisdiction over an employer operating a radio station if his gross receipts equal or exceed $100,000 per year, *Raritan Valley Broadcasting Co.,* 122 N. L. R. B. 90, and in determining the relevant employer, the Board considers several nominally separate business entities to be a single employer where they comprise an integrated enterprise, N. L. R. B. Twenty-First Ann. Rep. 14-15 (1956). The controlling criteria, set out and elaborated in Board decisions, are interrelation of operations, common management, centralized control of labor relations and common ownership. *Sakrete of Northern California, Inc.,* 137 N. L. R. B. 1220, aff'd 332 F. 2d 902 (C. A. 9th Cir.), cert. denied, 379 U. S. 961; *Family Laundry, Inc.,* 121 N. L. R. B. 1619; *Canton, Carp's Inc.* 125 N. L. R. B. 483; *V. I. P. Radio, Inc.,* 128 N. L. R. B. 113; *Perfect T. V., Inc.* 134 N. L. R. B. 575; *Overton Markets, Inc.,* 255 142 N. L. R. B. 615. The record made below is more than adequate to show that all of these factors are present in regard to the Holt enterprise and that this is not a case which the Board has announced it would decline to hear. Since the conduct set out in the complaint is regulated by the Labor Management Relations Act, 1947, 29 U. S. C. A. § 141 *et seq.* (1958 ed.), "due regard for the federal enactment requires that state jurisdiction must yield." *San Diego*

*Building Trades* v. *Garmon*, 359 U. S. 236, 244; *Construction & General Laborers' Union* v. *Curry*, 371 U. S. 542.

Reversed."

There is some question as to whether it would be proper in cases such as this, to wholly decline jurisdiction until the N. L. R. B. has first acted.

We feel that the proper procedure is for the state trial court, upon the filing of a motion to dismiss the proceeding for want of jurisdiction, to conduct a full-scale hearing upon the jurisdictional issue. If, upon consideration of the proof presented at that hearing, the trial court finds that the case is not one of which the N. L. R. B. would take jurisdiction (as, for example, if the proof showed that the value of the inflow and outflow in interstate commerce is less than $50,000), then the trial court should retain jurisdiction and proceed with the determination of the case. On the other hand, if the trial court finds that the case is one that falls within the jurisdiction of the N. L. R. B., or if the court finds that the question of jurisdiction is so close that the case is arguably within the jurisdiction of the N. L. R. B., then the court should dismiss the proceeding, remitting the losing party to its remedy by appeal to this court or by application to the N. L. R. B.

(Counsel for appellant in oral argument stated that a N. L. R. B. ruling could be had and relief obtained within approximately 10 days from the date of its filing with that tribunal.)

We are of the view that the preponderance of the testimony before the trial court below made the question of the interrelation of the two firms "arguably" within the jurisdiction of the N. L. R. B. and that a similar finding should be made on both (jurisdictional) issues.

It follows that the decree is reversed with directions to dissolve the injunction and dismiss the litigation without prejudice pending adjudication of the question of jurisdiction by the N. L. R. B.

ROBINSON, J., dissents.

JOHNSON, J., not participating.

SAM ROBINSON, Associate Justice, (dissenting). The majority turns this case on the question of whether it is arguable that Ark-La is buying supplies shipped in interstate commerce exceeding $50,000 in value, or whether Ark-La and Mid-South, for purposes of the National Labor Relations Act, are one and the same thing. I do not think this is the controlling point. It is my view that even if it were conceded that both of the foregoing propositions should be answered in the affirmative, still, according to the undisputed facts in this case, the state courts have jurisdiction to prohibit appellants from doing the thing the undisputed evidence shows they were doing, and that is they were picketing only for the purpose of preventing the appellees from employing nonunion labor. We have held that picketing for such purposes is unlawful and subject to injunction. *Burgess* v. *Daniel Plumbing & Gas Co.*, 225 Ark. 792, 285 S. W. 2d 517. We said in *Self* v. *Taylor*, 217 Ark. 953, 235 S. W. 2d 45:

"It is equally well settled that even peaceful picketing for an unlawful objective is not protected by the constitutional guarantee of the right of free speech. We recognized this in the *Asimos* case, *supra*, where we said at p. 702: 'On the authority of these Federal cases the injunction in the case at bar could be sustained in some form, if the appellees had shown that the Union was picketing the Jefferson Coffee Shop in an effort to compel the execution of a "closed-shop" contract.' See, also, *Giboney* v. *Empire Storage & Ice Company,* 336 U. S. 490, 69 S. Ct. 684, 93 L. Ed. 834; *Union Local 262* v. *Gazzam,* 339 U. S. 532, 70 S. Ct. 784; *Union Local 309* v. *Hanke,* 339 U. S. 470, 70 S. Ct. 773; *Amalgamated Meat Cutters* v. *Green,* 119 Colo. 92, 200 Pac. 2d 924; *Construction and General Labor Union* v. *Stephenson,* (Tex.) 225 S. W. 2d 958; *Local Union No. 519* v. *Robertson,* (Fla.) 44 So. 2d 899."

The majority relies on *San Diego Buildings Trades Council, etc.* v. *Garmon,* 79 S. Ct. 773, 359 U. S. 236, 1 L. Ed. 2d 860, but the facts in that case are entirely dif-

ferent from the facts in the case at bar, and the law announced in Garmon is favorable to appellee here. The majority points out that here it is stipuated that Carpenters Local No. 1684, the defendant, did not represent any employee of Mid-South or Ark-La and that the evidence shows there was no protest made about low wages on the job by representatives of the defendant, and the only protest was the failure to use union labor exclusively; Ark-La was paying union scale to the people that worked on the job.

Actually, the Garmon case relied on by the majority supports the appellee. In that case the court said: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." It is clear from the Garmon case that the state must *yield* jurisdiction in the first instance only where it is clear that the activities which the state purports to regulate are protected by Section 7 or constitute an unfair labor practice under Section 8 of the National Labor Relations Act. The majority has not pointed out where anything said in Sections 7 or 8 is applicable to the facts in the case at bar.

The appellant was, at all times, acting within Amendment 34 to the Constitution of Arkansas, which provides: "No person shall be denied employment because of membership in or affiliation with or resignation from a labor union, or because of refusal to join or affiliate with a labor union; nor shall any corporation or individual or association of any kind enter into any contract, written or oral, to exclude from employment members of a labor union or persons who refuse to join a labor union, or because of resignation from a labor union; nor shall any person against his will be compelled to pay dues to any labor organization as a prerequisite to or condition of employment."

This provision of our Constitution is valid under Section 14(b) of the Taft-Hartley Law, which provides:

"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

The majority, in effect, says that before the courts of this State can enforce a valid provision of its Constitution—a provision which has been recognized as valid by laws adopted by the Congress of the United States, we must first have the permission of the National Labor Relations Board. I do not subscribe to that view.

Before the National Labor Relations Board makes a final determination of this matter, in all probability, months instead of 10 days will have elapsed. In the meantime a construction project will be closed down; many people will be thrown out of employment. This is a tragic result, especially when it is considered that there can be only one final result, and that is that the appellant has a right to enjoin the unlawful picketing.

For the reasons stated, I respectfully dissent.